# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

| | | |
|---|---|---|
| SHANE MALLON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:19-cv-00795-BPG |
| FROSTBURG STATE UNIVERSITY, *et al.*, | * | **Request for Hearing** |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANTS FROSTBURG STATE UNIVERSITY AND THE STATE OF MARYLAND'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants Frostburg State University and the State of Maryland ("Defendants" or "Frostburg State"), by their undersigned counsel, respectfully submits this memorandum of law in support of their motion to dismiss or, in the alternative, for summary judgment on Plaintiff Shane Mallon's ("Plaintiff" of "Mr. Mallon") four counts under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act.

## INTRODUCTION

Universities and local communities have had to contend with new outbreaks of dangerous diseases. *See* "Mumps outbreak at Temple adds to growing number of cases on college campus," PHILADELPHIA INQUIRER (April 18, 2019); "Third case of measles confirmed in Maryland; health officials warn of possible exposure in Pikesville," BALTIMORE SUN (April 17, 2019); "Measles Outbreak: Yeshiva's Preschool Program is Closed by New York City Health Officials," N.Y. TIMES (April 15, 2019).[1] Following recommendations of the Centers for Disease Control

---

[1] *Available at*: https://www.philly.com/health/mumps-temple-university-outbreak-contagious-disease-20190301.html; https://www.baltimoresun.com/health/bs-md-third-measles-

("CDC"), Frostburg State has dealt with this public health issue by requiring students to provide proof of immunity or vaccination to diseases or sign a waiver to agree to stay off campus in the event of an outbreak.

In the face of this serious public health issue, Plaintiff has manufactured this baseless lawsuit to try extract taxpayer funds from the State of Maryland based on his own refusal to accept the reasonable accommodations Frostburg State offered him when he failed to submit evidence of vaccinations or immunities to certain diseases. Plaintiff was a student at Frostburg State for a single semester when he received a warning that his account could be put on hold if did not supply proof of immunity or documentation of vaccinations. Citing his alleged rheumatoid arthritis, Plaintiff argued that he could not obtain new "live" vaccines to measles, mumps, or rubella. In response, Frostburg State provided him with several options, each of which constituted a reasonable accommodations:

> (1) obtain his childhood vaccination records;
> (2) take a routine blood test to see if his childhood vaccines still provided him with immunity; or
> (3) sign a waiver form acknowledging that he would be identified as at risk for illness in event of an outbreak on campus and be required to stay away from campus.

Plaintiff stubbornly (and strategically) refused each of these options. Instead, Plaintiff obtained counsel early on to help set-up a lawsuit because Plaintiff was, in his words, "going to take us" for that all he can. **Exh. 3**: Declaration of Janelle Moffett ("Moffett Decl.") ¶ 6.

The Court should end this frivolous lawsuit now. Plaintiff cannot make a *prima facie* case that he was "otherwise qualified" due to: (1) his failure to repay a student loan; and (2) his failure to provide documentation of his (non-live) tetanus vaccination from 2011 to Frostburg State. Furthermore, Plaintiff cannot possibly show that Frostburg State's legitimate goals of student debt

---

case-20190417-story.html; https://www.nytimes.com/2019/04/15/nyregion/measles-nyc-yeshiva-closing.html.

collection and disease control were mere pretext for unlawful discrimination. Frostburg State, moreover, offered Plaintiff reasonable accommodations which he refused. The Court should grant Frostburg State's motion to dismiss or, in the alternative, for summary judgment.

## BACKGROUND

Plaintiff first enrolled as a student at Frostburg State in the Fall 2017. *See* Amended Complaint "(AC)" ¶ 7 [Doc. 2-1]. Later that fall, Plaintiff received a warning that his student account would be put on hold through the Defendant's health center. AC ¶ 8. The warning was sent because Plaintiff had failed to comply with Frostburg State's immunization policy. **Exh. 1**: Declaration of D. Smith ("Smith Decl.") ¶ 8.

Frostburg State University's immunization policy requires all students to be immunized or show proof of immunity for measles, rubella, diphtheria, tetanus and mumps, and have documentation of such immunity on file with the Brady Health Center (which is Frostburg State's medical center). **Exh. 1**: Smith Decl. ¶ 4; **Exh. 1A**: Policy. Frostburg State's policy is based on recommendations of the Advisory Committee on Immunization Practices of the U.S. Centers for Disease Control and Prevention and the American College Health Association. **Exh. 1**: Smith Decl. ¶ 5. Frostburg State's policy on immunizations is consistent with other public universities in Maryland. *Id.*

On October 24, 2017, Plaintiff walked into the Brady Health Center to address the issue. *Id.* ¶ 9. Mr. Mallon said that he had received vaccinations as a child, but that since he was born in Ireland, he claimed that he had no way of obtaining his immunization records. *Id.*

Darlene Smith, the Nurse Practitioner, Director, at the Brady Health Center advised Plaintiff that he could also satisfy Frostburg State's policy by taking a routine Measles, Mumps, and Rubella ("MMR") antibody titer's blood test. *Id.* Smith offered Plaintiff the options to have a MMR titer's test done at Frostburg State or contact his primary care physician and have it done

at the Frostburg Diagnostic Center. *Id.* This test would have measured Plaintiff's possible immunity or susceptibility to certain disease. *Id.*

Plaintiff also told Smith that he had was treated for a tetanus vaccine six years earlier in 2011 at Good Samaritan Hospital in Baltimore. *Id*. As a result, Ms. Smith offered him the option of completing a form to release his tetanus shot record administered at Good Samaritan to the Brady Health Center. *Id.* In addition, Mr. Mallon was also offered the option to sign a standard exemption form. *Id.* Plaintiff did not comply with any of these accommodations. *Id*. ¶ 10.

In the interim, on December 19, 2017, Plaintiff had taken out a temporary student loan for $1,000 from the Frostburg State Foundation. **Exh. 3**: Moffett Decl. ¶ 3. Per standard policy, a financial hold was then placed on Plaintiff's student account. *Id.* ¶ 4. The loan was to be supposed to be repaid by February 28, 2018. *Id.* Plaintiff would ultimately not repay it until August 21, 2018. *Id.* ¶ 8. On multiple occasions, Plaintiff rudely demanded that he be allowed to register despite the financial hold, and once told Ms. Janelle Moffett of the Frostburg State Foundation that he would "report me to the authorities." *Id*. ¶ 5. Despite his rude treatment, Plaintiff's financial hold was temporarily lifted three times to allow him to register for classes. *Id.* The financial hold was not permanently removed until August 21, 2018, when Plaintiff repaid the loan and threatened that he was "going to take us" for all he can in a lawsuit. *Id.* ¶ 6.

In the spring of 2018, when the Brady Health Center hold remained in effect, Plaintiff retained an attorney and took new actions. In March 2018, Plaintiff retained a new doctor. AC ¶ 14. On April 6, 2018, Plaintiff had his doctor fax a letter that read:

> To Whom It May Concern:
>
> I have had the pleasure of taking care of Mr. Mallon since March 2018, but his autoimmune condition has required treatment for several years.
>
> Due to his immunocompromised state, Mr. Mallon is not eligible to receive live vaccinations, such as the MMR vaccination.

4

> Please do not hesitate to contact me at 410-550-8470 if you have any questions or concerns.
>
> John Miller
> RE: Mallon, Shane

AC ¶ 14. The MMR vaccination for measles, mumps and rubella covers just three of the diseases referenced in Frostburg State's policy on vaccinations and immunity. **Exh. 1A**: Policy. The letter stated nothing about Plaintiff's vaccination in 2011 for tetanus or his eligibility for other non-live vaccinations such as diphtheria. AC ¶ 14; **Exh. 1**: Smith Decl. ¶ 16.

In response to Dr. Miller's invitation to contact him, Darlene Smith of the Brady Health Center contacted Dr. Miller's offices. *Id.* Smith asked Dr. Miller about having a titers blood test done in lieu of the live MMR vaccination. *Id.* Dr. Miller's office informed Smith they would contact the patient about doing the blood test. However, Mr. Mallon apparently declined to have it done and never provided it to Frostburg State. *Id.* Although Mr. Mallon represented he had a tetanus shot within the last ten years per Frostburg State's policy, he never provided documentation of it. *Id.* A tetanus shot is not contraindicated by an autoimmune condition and Dr. Miller's letter regarding the MMR vaccination is not applicable to tetanus and diphtheria shots. *Id.*

Plaintiff next contacted Braford Nixon, the General Counsel to Frostburg State. **Exh. 2**: Declaration of Bradford Nixon ("Nixon Decl.") ¶ 8. Mr. Nixon again offered him the option of signing a standard waiver, which would allow him to register (assuming he satisfied the financial hold) but that he would agree to stay off campus in the event of a disease outbreak. **Exh. 2**: Nixon Decl. ¶ 8. Plaintiff refused stating that signing a "religious" release would compromise his principles. *Id.* ¶ 9. In another attempt to accommodate him, Frostburg State offered Plaintiff a newly created waiver "for reasons of conscience." *Id.* When Mr. Mallon was presented with this new form, he declined stating that his attorney instructed him not to sign anything. *Id.* Plaintiff thereby refused each of the accommodation options offered by Frostburg State.

Instead, for Spring semester 2018, Plaintiff unilaterally dropped his on-campus classes as his own "solution." *Id.* ¶ 10. However, under Frostburg State's policy, immunization is waived only for "students who are in 'online only' programs." **Exh. 1A**: Policy ¶ II.A. Nursing is the only "online only" undergraduate online program. **Exh. 2**: Nixon Decl. ¶ 10; **Exh. 2C**: FSU Website. By contrast, Plaintiff was a majoring in business, which is not an "'online-only' program" for undergraduates such as himself. AC ¶¶ 7 & 22; **Exh. 1**: Nixon Decl. ¶ 11. As a result, this was not a reasonable or even feasible "solution." *Id.* ¶ 10-11.[2]

In Fall 2018, Plaintiff voluntarily left Frostburg State without accepting any of its reasonable accommodations. On March 15, 2019, Plaintiff filed a four-count complaint alleging intentional disability discrimination and failure-to-accommodate claims. (Doc 1).

## LEGAL STANDARD

Rule 12(b)(6) mandates dismissal if the pleadings fail to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts may take judicial notice of public records and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Phillips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *BVR Develop., LLC v. CalAtlantic Group, Inc.*, 2019 WL 919560, at *4 (D. Md. Feb. 25, 2019) (granting motion to dismiss after considering letters relied on in complaint).

Rule 56(a) mandates summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not

---

[2] To defend itself from Plaintiff's legal action, Frostburg State may disclose information under the Family Educational Rights and Privacy Act. 34 C.F.R. § 99.31(a)(9)(iii).

6

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Parties may move for summary judgment "at any time. . . ." Fed. R. Civ. P. 56(b).

## ARGUMENT

In the Amended Complaint, Plaintiff brings four counts for intentional disability discrimination in Counts I (ADA) and III (Rehabilitation Act), and failure-to-accommodate claims in Counts II (ADA) and IV (Rehabilitation Act). Plaintiff's four counts all fail as a matter of law.

**I. PLAINTIFF CANNOT PLEAD OR PROVE HIS INTENTIONAL DISABILITY DISCRIMINATION CLAIMS DUE TO THE HOLDS FOR HIS STUDENT DEBT AND HIS FAILURE TO PROVIDE DOCUMENTATION OF HIS TETANUS VACCINATION**

Plaintiff's Counts I and III assert intentional discrimination claims under the ADA and Rehabilitation Act. To establish a *prima facie* claim for intentional disability discrimination, Plaintiff must plead and prove that: "(1) [he] has a disability as defined by the acts; (2) [he] is *otherwise qualified* for the benefit or program at issue; and (3) [he] was excluded from the benefit or program *on the basis of [his] disability*." *Davis v. Univ. of No. Carolina*, 263 F.3d 95, 99 (4th Cir. 2001) (affirming summary judgment in favor of university on student's disability discrimination claims after he was removed from program) (emphasis added).[3] Furthermore, both statutes require "but-for" causation. *See Gentry v. East West Partners Club Mgmt.*, 816 F.3d 228, 235 (4th Cir. 2016) (affirming but-for causation for ADA claims); *Sellers v. School Bd. of City of Manassas, Va.*, 141 F.3d 524, 528 (4th Cir. 1998) (same for Rehabilitation Act).

---

[3] For the purposes of this motion only, Defendants will assume Plaintiff had a qualifying disability. Defendants reserve the right to challenge this assertion. *See, e.g., Eubanks v. Mercy Medical Center, Inc.*, 2015 WL 9255326, at *6 (D. Md. Dec. 17, 2015) (holding plaintiff with autoimmune disease failed to allege a substantia limitation on major life activity).

As shown below, Plaintiff cannot make out a *prima facie* case of disability discrimination or establish pretext for intentional discrimination.

### A. Plaintiff Cannot Show He Was Otherwise Qualified Due to His Debt.

On the second element, Plaintiff cannot show he was "otherwise qualified" given he had a financial block restricting his registration for classes due to his unpaid student loan debt to Frostburg State. The statutory phrase "otherwise qualified" has been interpreted to mean that the Plaintiff met "all of a program's requirements in spite of his handicap." *See Community College v. Davis*, 442 U.S. 397, 406 (1979) (quoted in *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 462 (4th Cir. 2012)).

Courts have held that plaintiffs were not "otherwise qualified" when they had failed to repay student loans at the time, s*ee Zingher v. Yacavone*, 30 F. Supp. 2d 446, 454 (D. Vt. 1997) (holding plaintiff not "otherwise qualified" under ADA where he had defaulted on student loans), or comply with standard financial policies of the defendant. *See Bell-Kachelski v. Mich. Protection & Advocacy Serv.*, 2018 WL 6823769, at *2 (6th Cir. Cir. 2018) (affirming denial of ADA claims of plaintiff seeking student tuition funding who failed to comply with "standard policy that requires any individual it serves to develop [plan for employment] before it authorizes any non-assessment financial assistance"); *Toledo v. Puerto Rico Labor & Human Resources Dept*., 203 F. Supp. 2d 127, 130 (D. Puerto Rico 2002) (dismissing ADA claims where student was denied tuition grant because he did not comply with program requirements).

Likewise here, Plaintiff cannot show that he was "otherwise qualified" as he left unpaid his overdue student loan through the end of the 2017/2018 academic year. **Exh. 3**: Moffett Decl. ¶ 8. Frostburg State has a public interest in ensuring that its students repay funds as a qualification for continued participation in its programs. As Plaintiff cannot satisfy the element he was "otherwise qualified," the Court should grant summary judgment in favor of Frostburg State.

### B. Plaintiff Cannot Show He Was Otherwise Qualified Due to His Failure to Supply Documentation of His Tetanus Vaccination.

Additionally, even if Plaintiff had a medical basis for not taking the MMR vaccination, Plaintiff cannot show that he was "otherwise qualified" given he failed to supply documentation of his tetanus vaccination from Good Samaritan Hospital or of a diphtheria vaccination. Plaintiff has no excuse for his refusal to supply documentation of his tetanus vaccination or to provide proof of, or have administered, the diphtheria vaccine. Neither of these "non-live" vaccines are contraindicated by an autoimmune disease. **Exh. 1**: Smith Decl. ¶ 16.

Frostburg State's policy clearly required Plaintiff to supply proof of immunization to tetanus and diphtheria. **Exh. 1A**: Policy. Plaintiff's doctor's letter stated only that *live* vaccinations (i.e., measles, mumps and rubella) were contraindicated. **Exh. 1D**: Letter. Moreover, Plaintiff was obviously able to receive this non-live tetanus vaccination given he stated in October 2017 that he had one only six years hence in Baltimore. **Exh. 1**: Smith Decl. ¶ 9. Thus, Plaintiff's alleged disability was no impediment to his supplying this documentation readily available to him from Baltimore's local Good Samaritan Hospital. Yet Plaintiff never supplied it. *Id.* ¶ 16.

Where, as here, Plaintiff failed to supply relevant medical documentation to Defendants, courts have consistently rejected the plaintiff's ADA and Rehabilitation Act claims. *See Rice v. HAR-CO Credit Union*, 2014 WL 4686669, at *4 (D. Md. Sept. 17, 2014) (holding plaintiff failed to establish *prima facie* case of ADA claim as "Plaintiff has failed to provide documentation" on illness to defendant); *Ranger v. Colvin*, 983 F. Supp. 2d 966, 975-976 (N.D. Ill. 2013) (granting summary judgment on Rehabilitation Act and ADA claims where plaintiff "failed to provide medical documentation to support those requests"); *Edwards v. Potter*, 2007 WL 1342532, at *7 (S.D. Ohio May 4, 2007) (rejecting Rehabilitation Act claim where plaintiff "failed or refused to provide medical documentation" required under collective bargaining agreement).

Likewise here, Plaintiff's cannot show he was "otherwise qualified" when he refused to supply medical documentation of tetanus immunization available to him from Good Samaritan Hospital or to take the non-live diphtheria vaccine. Frostburg State has a compelling interest in ensuring that its students provide proof of immunity. Since Plaintiff cannot satisfy the element that he was "otherwise qualified," the Court should grant summary judgment in favor of Frostburg State for this reason as well.[4]

### C. Plaintiff Cannot Establish Both Pretext and Discriminatory Animus.

Not only does Plaintiff fail to establish a *prima facie* case, Plaintiff cannot overcome Frostburg State's legitimate, nondiscriminatory reasons for its actions. *See, e.g., Abilt v. C.I.A.*, 848 F.3d 305, 315 (4th Cir. 2017) (applying *McDonnell* burden-shifting to disability discrimination claims). As detailed above, Frostburg State had compelling reasons for its actions, namely: (1) having student's pay their debts; and (2) provide proof of immunization to control diseases among its student population.

Plaintiff has the burden to demonstrate that these proffered reasons were actually "pretext for discrimination." *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019). Plaintiff must prove *both* that the articulated reason is pretextual *and* that discrimination was the true reason for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000). Put simply, it "is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Reeves*, 530 U.S. at 147 (emphasis in original).

---

[4] Plaintiff further cannot satisfy the third element of showing that he was excluded "on the basis of [his] disability" where Frostburg State's objectives and policies were implemented based on CDC recommendations for disease control. **Exh. 1**: Smith Decl. ¶ 5.

Here, Plaintiff cannot show that Frostburg State's legitimate goal of collecting student debts was mere pretext for unlawful discrimination. In the analogous case of *Schuler v. Univ. of Denver*, 2014 WL 4948113 (D. Colo. Oct. 1, 2014), a student brought Rehabilitation Act claims against the University of Denver. Similar to Plaintiff, the student's registration was blocked because he had "not cleared his financial hold" for his unpaid debt to the University and he failed to submit certain medical documentation. *See Schuler*, 2014 WL 4948113, at *8. The student brought claims for disability discrimination and retaliation against the University. *Id*. at *9. In granting summary judgment to the University, the district court held that the University had legitimate, nondiscriminatory reasons for prohibiting Plaintiff from registering for classes, including his failure to provide requested medical documentation and failure to "clear the financial hold on his account." *Id.* at *10. Likewise here, Plaintiff cannot show that Frostburg State's legitimate, nondiscriminatory reasons to block registration due to his unpaid loan debt.

Additionally, Plaintiff cannot possibly that Frostburg State's compelling interest in controlling disease among its student population was merely pretextual. Frostburg State's public health objectives for its community was based on sound medical research by the CDC. **Exh. 1**: Smith Decl. ¶¶ 5-6. Courts have consistently recognized the importance of requiring vaccination or proof of immunity. As the Sixth Circuit has recognized:

> The importance of extensive vaccination should not be understated—the efficacy of vaccination relies on the theory of "herd immunity. . . ." The critical mass needed to achieve herd immunity varies by disease, but is uniformly large. . . . Thus, to stop the outbreak of preventable diseases in public school, the significant majority of children entering the school system must be vaccinated. It is true that [the State] is trying to discourage parents from opting out of vaccination—but it is only doing so to protect children from serious and avoidable disease.

*Nikolao v. Lyon*, 875 F.3d 310, 318 (6th Cir. 2017); *accord Watkins-El v. Dept. of Ed.*, 2016 WL 5867048, at *4 (E.D.N.Y. Oct. 7, 2016) ("Plaintiff has not shown that his familial decisions take

precedence over New York State vaccination laws, which shelters the most vulnerable members of society with herd immunity.").

Courts have rejected ADA and Rehabilitation Claims by students and employees with alleged autoimmune and other diseases in part by recognizing that defendants have legitimate, nondiscriminatory reasons for requiring vaccinations or proof of immunity. *See Wren v. Midwestern State Univ.*, 2019 WL 501920, at *9 (N.D. Tex. Jan. 23, 2019) (dismissing Rehabilitation Act claim by student alleging severe allergic reaction to vaccinations where University was attempting to verify compliance and exemptions with immunization requirements); *D.A.B. v. New York City Dept. of Educ.*, 45 F. Supp. 3d 400 (S.D.N.Y. 2014) (holding school's vaccination requirement was not discriminatory for Rehabilitation Act claim brought by autistic student). *See also Hustvet v. Allina Health Sys.*, 283 F. Supp. 3d 734, 739 (D. Minn. 2017) (granting summary judgment on ADA claim brought by employee with alleged disability who refused MMR vaccine required by her employer); *cf. Madock v. McHugh*, 2011 WL 3654460, at *1 (D. Md. Aug. 11, 2011) (rejecting constructive discharge claim under Rehabilitation Act brought by employee who could not take certain vaccines due to her multiple sclerosis).

Here, Plaintiff's intentional disability discrimination claims are even weaker given Frostburg State gave him the option of a complete exemption if he would sign a waiver to stay off campus in the event of an outbreak. Simply put, Plaintiff cannot show that Frostburg State's reasons of collecting student debts and controlling disease were mere pretext, and the real reason was invidious discrimination.

## II. PLAINTIFF CANNOT PLEAD OR PROVE A *PRIMA FACIE* CLAIM FOR FAILURE-TO-ACCOMMODATE DUE TO THE FINANCIAL HOLD FOR HIS UNPAID STUDENT LOAN DEBT AND HIS REFUSAL TO SIGN A WAIVER IN CASE OF AN OUTBREAK.

Plaintiff's Counts II and IV's failure-to-accommodate claims under the ADA and Rehabilitation Act are legally defective as well. For a *prima facie* claim of failure-to-accommodate

12

in the education context, Plaintiff must plead and prove that: "(1) he has a disability, (2) he is *otherwise qualified* to participate in the defendant's program, and (3) he was excluded from the program *on the basis of his disability*." *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 461 (4th Cir. 2012) (emphasis added). "A qualified individual is one who, with or without reasonable modifications to rules, policies, or practices, meets the essential eligibility requirements for participation in a program or activity." *Zimmeck v. Marshall Univ. Bd. of Governors*, 632 F. App'x 117, 120 (4th Cir. 2015); *accord Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (affirming dismissal on *prima facie* elements of failure-to-accommodate under ADA).

The *gravamen* of Plaintiff's failure-to-accommodate claims are that because he has rheumatoid arthritis, and is not currently eligible to receive live vaccinations, such as the MMR vaccination, he is disabled under law and the University was required, but failed, to provide him reasonable accommodations. These claims fails as a matter of law for the reasons below.

### A. Plaintiff Was Not Otherwise Qualified Due to His Unpaid Student Loan.

As with his intentional discrimination claims, Plaintiff cannot satisfy his burden of pleading or proving that he was an "otherwise qualified" person for Counts II and IV due to his unpaid student loan debt. As detailed above, Plaintiff failed to repay a student loan debt throughout most of 2018. *See supra* Point I.A. The Court should grant summary judgment in favor of Frostburg State on Count II under the ADA and Count IV under the Rehabilitation Act. *See Zingher*, 30 F. Supp. 2d at 454; *Bell-Kachelski*, 2018 WL 6823769, at *2; *Toledo*, 203 F. Supp. 2d at 130.

### B. Plaintiff Was Not Otherwise Qualified Due to His Failure to Provide Documentation of his Tetanus Vaccination.

Similarly, Plaintiff cannot show he was "otherwise qualified" given he failed to supply documentation of his tetanus vaccination from Good Samaritan Hospital. Given Plaintiff allegedly received such a vaccination, there is no excuse for his failure to supply it to Frostburg State. **Exh.**

**1**: Smith Decl. ¶¶ 9 & 16.  Thus, the Court should grant summary judgment in favor of Frostburg State on Count II under the ADA and Count IV under the Rehabilitation Act.  *See Rice*, 2014 WL 4686669, at *4; *Ranger*, 983 F. Supp. 2d at 975-976; Edwards, 2007 WL 1342532, at *7.

### C. Frostburg State Offered Reasonable Accommodations.

Plaintiff further cannot satisfy the *prima facie* element of showing Frostburg State failed to provide him with a reasonable accommodation.  Plaintiff has the burden of pleading and proving facts to show that with a "reasonable accommodation he could perform" but that Defendants "refused to make such accommodations." *Rubino v. New Action Mobile Indus., LLC*, 44 F. Supp. 3d 616, 623 (D. Md. 2014) (granting motion to dismiss for plaintiff's failure to plead facts of reasonable accommodation).

The Fourth Circuit has made clear that the law "requires a '*reasonable*' accommodation, ***not a perfect one***." *Adams v. Anne Arundel Cnty. Pub. Schools*, 789 F.3d 422, 433 (4th Cir. 2015) (emphasis added).  Defendants are also *not* required "to provide the exact accommodation that [Plaintiff] requests. . . ." *Hannah P. v. Coats*, 916 F.3d 327, 338 (4th Cir. 2019).  As this Court recognizes, the ADA does *not* require Frostburg State to provide Plaintiff "the accommodation he or she requests or prefers" but "only provide some reasonable accommodation." *Thomas v. City of Annapolis*, 2018 WL 4206951, at *13 (D. Md. Sept. 4, 2018) (Gesner, J.) (quoting *Crawford v. Union Carbide Corp.*, 1999 WL 1142346, at *8 (4th Cir. 1999)).  After all, "reasonable accommodation is not a one-way street, with [Defendants] ceding to all of the [Plaintiff's] requests. . . ." *Brady v. Bd. of Educ. Prince George's Cnty.*, 222 F.Supp.3d 459, 469 (D. Md. 2016). Yet a one-way street is exactly what Plaintiff has demanded throughout from Frostburg State.

Here, Plaintiff did not supply any proof of immunity or even documentation of his recent tetanus vaccination from Good Samaritan Hospital.  Instead, Plaintiff had his private physician

14

fax a letter to the University, which addresses only the MMR vaccine, and unilaterally dropped his on-campus classes for the Spring 2018 semester as a "solution."[5] Frostburg State's medical professionals and officials were concerned about the risks of exposing the community (and Plaintiff himself) to dangerous diseases from a person with no known immunity. Moreover, Plaintiff's "solution" was illusory because under Frostburg State's academic requirements, his undergraduate business major program was not an "'online only' program", and he would have had to return to campus. AC ¶¶ 7 & 22; **Exh. 2**: Nixon Decl. ¶ 11; **Exh. 2C**: FSU Website.

In response, Frostburg State provided three reasonable accommodations to Plaintiff: (1) try to obtain his childhood immunization records; (2) take a routine blood titer test to see if his childhood vaccines were still providing him immunity; or (3) sign a waiver to acknowledge he would be required to stay away from campus in the event of a disease outbreak. **Exh. 1**: Smith Decl. ¶¶ 9-10; **Exh. 2**: Nixon Decl. ¶¶ 8-10.

However, Plaintiff adamantly refused all three accommodations. Plaintiff did not obtain his records of childhood vaccinations from Ireland. Plaintiff refused to take the titer test from his own doctor or at Frostburg State. And Plaintiff rejected two forms of waivers that Frostburg State provided to him. *Id*. Plaintiff told Frostburg State that his attorney told him not to sign *any* waiver. *Id*. He later boasted that he would make money from a lawsuit. **Exh. 3**: Moffett Decl. ¶ 6.

Plaintiff argues that Frostburg State's immunization policy and public health objectives went beyond that currently required by statutory law. Public universities, however, have a right to establish their own policies on matters of health and safety. As the Fourth Circuit has recognized:

---

[5] Plaintiff repeatedly mislabels his doctor's note a "waiver." That is not an accurate label. "[F]ederal law is well-settled that waiver is the voluntary and intentional relinquishment of a known right. . . ." *Doe v. Kidd*, 501 F.3d 348, 354 (4th Cir. 2007).

"Simply put, all universities need not evaluate risk the same way." *Class v. Towson Univ.*, 806 F.3d 236, 252 (4th Cir. 2015).

Although Plaintiff professed to dislike these alternatives, he was not entitled to "the accommodation he . . . requests or prefers" but only "some reasonable accommodation." *Thomas*, 2018 WL 4206951, at *13. Given Plaintiff was offered reasonable accommodations by Frostburg State, the Court should grant summary judgment on his claims in Counts II and IV. *See Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3 454, 465 (4th Cir. 2012) (holding university offered reasonable accommodation and the "indefinite duration and uncertain likelihood of success of [plaintiff's] accommodation renders it unreasonable"); *Dark v. Houston Methodist San Jacinto Hosp.*, 2016 WL 2770545, at *1 (S.D. Tex. May 12, 2016) (granting summary judgment on ADA reasonable accommodation claim by plaintiff who refused vaccinations due to autoimmune disease); *cf. Robinson v. Children's Hosp. Boston*, 2016 WL 1337255, at *7 (D. Mass. April 5, 2016) (rejecting religious reasonable accommodation claim where defendant "worked with [plaintiff] several times to address her objection to the vaccine").

### D. The Court Should Dismiss Counts II and IV as Plaintiff Has Not Plausibly Pleaded "But-For" Causation in Light of the Educational Requirements.

Not only was Plaintiff's proposed "accommodation" of taking only online courses unreasonable, but he cannot plausibly plead that Frostburg State's rejection of it was the "but-for" causation of his alleged damages under the *Twombly/Iqbal* standard for Rule 12(b)(6). As noted above, the Fourth Circuit has held that the ADA and the Rehabilitation Act both require "but-for" causation of the harms by the discriminatory act. *See Gentry v. East West Partners Club Mgmt.*, 816 F.3d 228, 235 (4th Cir. 2016) ("[W]e conclude that the district court correctly applied a but-for causation standard to [plaintiff's] ADA claim"); *Sellers v. School Bd. of City of Manassas, Va.*, 141 F.3d 524, 528 (4th Cir. 1998) (same for Rehabilitation Act).

Plaintiff therefore must plead and prove that he "would not have been separated from [Frostburg State] 'but for' his disability." *Foltz v. Fairfax Cnty.*, 741 F. App'x 938, 938 (4th Cir. 2018); *see also Bales v. Md. Judiciary/Admin. Office of the Courts*, 2016 WL 6879902, at *19 (D. Md. Nov. 22, 2016) (granting motion to dismiss on Rehabilitation Act retaliation claim because plaintiff's "alleged facts do not meet this but-for causation standard").

Here, Plaintiff suggests that he could have remained at the school but-for Frostburg State's decision against his proposed "accommodation" of only taking online courses. Plaintiff alleges that he was seeking to "complete his bachelor's degree and master's degree through Defendant Frostburg State University's business school…." AC 7 & ¶ 22. For a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of the degree requirements and online programs on Frostburg State's public website. *See Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 F. App'x 223, 227 (4th Cir. 2013) (affirming dismissal of ADA and Rehabilitation Act claims after upholding district court's consideration of enrollment requirements on university's website). As shown on its website, Frostburg State's only fully "online only" undergraduate bachelor's program is for nursing, which Plaintiff does not (and cannot) allege was his major. **Exh. 2C**: *available at*: https://www.frostburg.edu/online/degree-programs-and-courses.php. Nor can Plaintiff reasonably challenge Frostburg State's academic requirements and qualifications for its educational programs, which are given great deference by federal courts. *See Davis v. Univ. of No. Carolina*, 263 F.3d 95, 102 (4th Cir. 2001) (holding courts "generally accord great deference to a school's determinations of the qualifications" of students).

As a result, even if Plaintiff had received his proposed "accommodation", Plaintiff fails to plausibly allege he would not have been separated "but for" the denial of this accommodation in light of Frostburg State's neutral degree requirements of campus coursework. Therefore, the Court should thus dismiss Plaintiff's failure-to-accommodate claims in Count II and IV for failing to

plausibly allege the element of but-for causation. *See Gragg v. Am. Intercontinental Univ.*, 2018 WL 3653350, at *3 (C.D. Ill. July 13, 2018) (dismissing ADA claim brought by student who "fails to allege 'but-for' causation"); *see also Boldin v. Wingfield*, 2010 WL 3766325, at **2-3 (W.D. Va. Sept. 16, 2010) (granting motion to dismiss reasonable accommodation claims that were not plausibly pleaded) (citing *Iqbal*, 129 S.Ct. at 1949)).

## IV. PLAINTIFF IS JUDICIALLY ESTOPPED FROM CLAIMING DAMAGES FOR LOST FUTURE PAY.

The Court should, at a minimum, dismiss Plaintiff's claim for lost earning capacity based on his recent representations to and classification by the Social Security Administration that he is unable to do substantial work. Since this constitutes the bulk of Plaintiff's otherwise nominal "damages," the Court should grant summary judgment on this damages claim to narrow the case. *See Pine Ridge Coal Co. v. Local 837, United Mine Workers*, 187 F.3d 415, 422 (4th Cir. 1999) (affirming magistrate order granting summary judgment on damages); *Mercantile Place #1 Ltd. P'ship v. Renal Treatment Centers-Mid Atlantic, Inc.*, 2017 WL 5171120, at *1 (D. Md. Nov. 8, 2017) (granting defendant's motion for partial summary judgment on damages).

In this federal court action, Plaintiff is demanding damages for his "present and future earning capacity/power." AC ¶ 38 [Doc. 2-1]. However, in 2016, Plaintiff represented to an Administrative Law Judge of the Social Security Administration (SSA) that he is unable to engage in any substantial employment due to his disability. **Exh. 4**: SSA Decision. Plaintiff was awarded a monthly paycheck from SSA for his alleged inability to engage in any substantial gainful activity. *Id.* Plaintiff cannot have it both ways to recover twice.

Courts have estopped parties like Plaintiff from seeking front pay in ADA cases based on their prior representations and classifications for SSA disability benefits. *See Cavaliere v. Advertising Specialty Institute, Inc.*, 853 F. Supp. 2d 472, 487 (E.D. Pa. 2012) (holding plaintiff's

statement to SSA claiming disabilities estopped her from claiming front pay as damages in ADA case); *Gilles v. Pleasant Hill Elementary School Dist. No. 69*, 2011 WL 5005995, at *5 (C.D. Ill. Oct. 20, 2011) (granting summary judgment to defendant on plaintiff's claim for front pay in ADA case based on SSA classification); *Christou v. Hyatt Regency-O'Hare*, 996 F. Supp. 811, 815 (N.D. Ill. 1998) (holding plaintiff was estopped from seeking front pay in ADA case given his testimony for his SSA disability benefits). Likewise here, the Court should grant summary judgment in favor of Defendants' on Plaintiff's claim for lost front pay.

## CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion and dismiss or, in the alternative, for summary judgment, and close this case.

Dated: April 18, 2019  
       Baltimore, Maryland

Respectfully submitted,

BRIAN E. FROSH  
Attorney General of Maryland

*/s/ C. Alexander Hortis*_____  
C. Alexander Hortis (Fed. Bar No. 28522)  
Assistant Attorney General  
Educational Affairs Division  
200 St. Paul Place, 17th Floor  
Baltimore, Maryland 21202-2021  
Phone: (410) 576-6320  
Email: ahortis@oag.state.md.us

*Attorneys for Defendants Frostburg State University and the State of Maryland*