**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| SHANE MALLON | * | |
| | * | |
| *Plaintiff*, | * | Civil Action No.: 1:19-cv-00795-BPG |
| | * | |
| vs. | * | |
| | * | |
| FROSTBURG STATE UNIVERSITY, et al. | * | |
| | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO THE DEFENDANTS FROSTBURG STATE UNIVERSITY AND STATE OF MARYLAND'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**
**AND REQUEST FOR HEARING**

Plaintiff Shane Mallon ("Plaintiff"), by and through his attorneys, John J. Leppler, Esq. #19736, and the law firm Bowers Law MD, hereby submits this memorandum of law in support of Plaintiff's response in opposition to the Defendants Frostburg State University's and State of Maryland's (referred to hereinafter collectively as the "Defendants") motion to dismiss or, in the alternative, motion for summary judgment, and request for hearing, and in support thereof states:

## I.     BACKGROUND PERTINENT TO THIS MOTION

**A.     *Facts and circumstances regarding Plaintiff's claims.***

**1.     *Plaintiff enrolled as an undergraduate student in Frostburg State University's business school for the Fall 2017 academic session, and sought to pursue his bachelor's degree and master's degree through the program*.**

Plaintiff is a 35-year-old male, a resident of the State of Maryland, and has a medical condition and a disability. See the First Declaration of Shane Mallon, attached as "**Exhibit 1**"; see also the Second Declaration of Shane Mallon, attached as "**Exhibit 2**"; *see also* Plaintiff's March 16, 2019 filed

amended complaint and jury demand (clean version only), attached as "**Exhibit 5**".Plaintiff has been diagnosed with the medical condition and his disability Rheumatoid Arthritis (a type of autoimmune disease), and he was first diagnosed with this medical condition in 2012 or 2013. **Exhibit 1**. For his medical condition and disability Rheumatoid Arthritis, Plaintiff takes immunosuppressive medications and has taken these medications since 2013. **Exhibit 1**. In fact, Plaintiff's treating rheumatologist and Johns Hopkins Hospital physician John Miller, M.D. has prescribed him immunosuppressive medications for his medical condition and disability Rheumatoid Arthritis, including but not limited to Biologics, Methotrexate, steroids, and inflammatory drugs. **Exhibit 1**. Additionally, because of Plaintiff's medical condition and disability Rheumatoid Arthritis, Plaintiff was and continues to be medically ineligible to get live vaccinations because of Plaintiff's immunocompromised state. **Exhibit 1**, **Exhibit 5**. Before Plaintiff enrolled as an undergraduate student at Frostburg State University, Plaintiff was employed at Baltimore Gas and Electric for approximately seven or eight years. Plaintiff's job at his former employer Baltimore Gas and Electric was an underground gas mechanic, and his job duties included fixing gas leaks and installing gas mains and surfaces. **Exhibit 1**. However, because of Plaintiff's medical condition and disability Rheumatoid Arthritis, he was forced to leave his employment at Baltimore Gas and Electric, and Baltimore Gas and Electric placed him on long-term disability. **Exhibit 1**. Additionally, because of Plaintiff's immunicompromised state, he cannot get live vaccinations including MMR vaccinations, and he is literally within the class of persons that herd immunity seeks to protect. (Manish Sadarangi, M.D., "Herd immunity describes how a population is protected from a disease after vaccination by stopping the germ responsible for the infection being transmitted between people. In this way even people who cannot be vaccinated can be protected." April 26, 2016 article on Oxford Vaccine Group, https://www.ovg.ox.ac.uk/news/herd-immunity-how-does-it-work).

Plaintiff first enrolled as a student at Frostburg State University for the Fall 2017 session to pursue his bachelor's degree at Frostburg State University's business school, and was on-track and intending to obtain his bachelor's and master's degree through this program. **Exhibit 1**. Throughout the course of Plaintiff's enrollment in the undergraduate program at Frostburg State University, Plaintiff received federal financial aid and a scholarship from the Maryland Higher Education Commission ("MHEC"). **Exhibit 1,** and **Exhibit 5**. Additionally, throughout the course of Plaintiff's enrollment as a student at Frostburg State University, Plaintiff was living off-campus, was never on academic probation, and completed his coursework as a student at Frostburg State University satisfactorily and up to the legitimate expectations of the school. **Exhibit 1**.

Moreover, Plaintiff was a student at Frostburg State University with a physical disability, had a record of a physical disability, and was actually perceived by Frostburg University to have a physical disability – his medical condition and disability Rheumatoid Arthritis. **Exhibit 1, Exhibit 5**. Unfortunately for Plaintiff, he was also kicked out of Frostburg State University as an undergraduate student in 2018 because of his medical condition and disability Rheumatoid Arthritis. **Exhibit 1, Exhibit 2, Exhibit 5.**

2. ***The Defendants' intentional disability discrimination and failure to accommodate Plaintiff because of his disability.***

a. ***Frostburg State University lifts the hold on Plaintiff's student account through the Brady Health Center which was because of his medical condition and disability Rheumatoid Arthritis, and Plaintiff was able to register for his Winter 2017 and Spring 2018 academic sessions classes.***

At sometime shortly before Plaintiff's Fall 2017 academic classes session at Frostburg State University which was Plaintiff's first academic session, Plaintiff had a hold on his student account through Frostburg State University's Brady Health Center. **Exhibit 1**. The hold through Brady Health Center stopped Plaintiff from being able to register for his Fall 2017, Winter 2017, and Spring 2018

academic classes. **Exhibit 1, Exhibit 2.** The hold through the Brady Health Center was solely because of Plainitff's medical condition and disability Rheumatoid Arthritis, and because of this medical condition and disability, he could not get vaccinations including but not limited to MMR vaccinations. **Exhibit 1, Exhibit 2**. (emphasis added).

Regarding the hold on Plaintiff's student account through the Brady Health Center, on or about October 24, 2017, Plaintiff met with Frostburg State University's nurse Darlene Smith at the Brady Health Center and explained and notified Ms. Smith about his medical condition and disability Rheumatoid Arthritis, and that because of the medical condition and disability, he cannot get vaccinations. **Exhibit 1**. Immediately thereafter, Ms. Smith lifted the hold on Plaintiff's student account through the Brady Health Center, and Plaintiff was able to successfully register for his Winter 2017 and Spring 2018 academic sessions classes at the school. **Exhibit 1.**

Additionally, and notably, Plaintiff successfully completed his coursework at Frostburg State University in the Fall 2017, Winter 2017, and Spring 2018 academic sessions without having to provide the school with proof of immunity and medical documentation related to this medical condition and disability, Rheumatoid Arthritis. **Exhibit 1, Exhibit 2.**

   b.    ***The two holds on Plaintiff's student account which stopped him from being able to `register for his Summer 2018 and Fall 2018 academic sessions classes***.

Before Plaintiff's registration for his Summer 2018 and Fall 2018 academic sessions classes at Frostburg State University, Plaintiff had two holds on his student account that prevented him from being able to register. **Exhibit 1, Exhibit 2.** The first hold was a financial advancement hold, and the second hold was through the Brady Health Center and related to Plaintiff's medical condition and disability Rheumatoid Arthritis. **Exhibit 1, Exhibit 2.**

   i.    ***The first hold on Plaintiff's student account (financial advancement hold), which was lifted and resolved as late as March 9, 2018***.

As late as March 9, 2018, Frostburg State University lifted the financial advancement hold. **Exhibit 1, Exhibit 2**. In fact, Frostburg State University's employee who works in the financial aid office Janelle Moffett communicated with Plaintiff via email transmission in February 2018 and March 2018 to ensure the financial advancement hold would be lifted immediately so Plaintiff could register for his Summer 2018 and Fall 2018 classes. **Exhibit 1, Exhibit 2.** <u>Additionally, Ms. Moffett told Plaintiff that because Frostburg State University made a mistake, the school directed Plaintiff not pay the $1,000 related to this financial advancement hold, and the school will take the $1,000 out of Plaintiff's grant money for the Fall 2018 academic session because the school should have taken the $1,000 out of his grant money for the Spring 2018 academic session. As an aside, because the school never took the $1,000 grant money out of Plaintiff's account, *ever*, Plaintiff actually paid the $1,000 to Frostburg State University out-of-pocket on August 21, 2018, which was approximately a week before the beginning of the Fall 2018 academic classes (August 28, 2018 was the first day of classes at the Fall 2018 academic session at Frostburg State University).</u> **Exhibit 1**.

As an aside, ***and for no reason at all and meritless***, Frostburg State University's General Counsel Bradford Nixon, Esq. on behalf of the school argued in the school's September 7, 2018 response statement to Plaintiff's July 27, 2018 filed discrimination claim with the MHEC against the school that, "… Mr. Mallon would not have been able to register for classes or obtain a transcript regardless of this issue as he had a registration hold for money that he owed the FSU Foundation, which was not settled until August 21, 2018." **Exhibit 1**, **Exhibit 2**.

> ii. ***The second hold on Plaintiff's student account through the Brady Health Center related to Plaintiff's medical condition and disability Rheumatoid Arthritis, which Frostburg State University refused to lift, and the hold on his student account which stopped him from being able to register for his Summer 2018 and Fall 2018 academic sessions classes***.

On March 30, 2018, before Plaintiff's available dates to register for Plaintiff's Summer 2018 and Fall 2018 academic sessions classes at Frostburg State University (April 2, 2018 and April 9, 2018 respectively), the school'sAssistant Vice President of Student Affairs Jeff Graham emailed Plaintiff. **Exhibit 1**. In the March 30, 2018 email, which Mr. Graham cced the school's Vice President of Student Affairs Tom Bowling on, Mr. Graham notified Plaintiff that there was still a hold on Plaintiff's student account through the Brady Health Center, and this hold on Plaintiff's student account through the Brady Health Center was again related to Plaintiff's medical condition and disability Rheumatoid Arthritis. **Exhibit 1**. On that same day, March 30, 2018, Plaintiff responded to Mr. Graham and Mr. Bowling and stated,

> "… I have spoken to the university advancement office and Mrs. Moffett has agreed to drop the hold so I can register on Monday just waiting on the Brady Health hold...".

**Exhibit 1**.

Shortly after this March 30, 2018 email Plaintiff received from Mr. Graham, on April 2, 2018, Tom Bowling emailed Plaintiff about the hold on his student account through the Brady Health Center, and Mr. Bowling asked Plaintiff to come by his office that afternoon to discuss the issue. **Exhibit 1**. Thereafter, and on that same day April 2, 2018, Plaintiff met with Mr. Bowling at his office, and Plaintiff explained his medical condition and disability Rheumatoid Arthritis which makes Plaintiff medical ineligibility to get vaccinations, and the issue with his hold on his student account through the Brady Health Center. <u>In response, Mr. Bowling told Plaintiff to "get a lawyer"</u>. **Exhibit 1**.

Immediately thereafter and on that same day, April 2, 2018, Plaintiff went to the school's President Ronald Nowaczyk's office to discuss his medical condition and disability Rheumatoid Arthritis and the hold on his student account through the Brady Health Center with President Nowaczyk. **Exhibit 1**. When Plaintiff arrived, Plaintiff was told that President Nowaczyk was out of

town. **Exhibit 1**. Plaintiff then asked President Nowaczyk's assistant / secretary if he could speak to legal counsel regarding this issue, and immediately, Plaintiff was able to meet with the school's General Counsel Bradford Nixon, Esq. **Exhibit 1**. When Plaintiff met Mr. Nixon in his office, Plaintiff explained to Mr. Nixon his medical condition and disability Rheumatoid Arthritis which makes him medically ineligible for vaccinations, and the hold on his student account through the Brady Health Center because of his medical condition and disability. **Exhibit 1.** <u>In response, Mr. Nixon advised Plaintiff to get a medical waiver for his medical condition and disability Rheumatoid Arthritis, Mr. Nixon told Plaintiff that this issue is something worth fighting for but it will be tough because Plaintiff will be going up against the State of Maryland, and Mr. Nixon advised Plaintiff to just have his doctor send the Frostburg State University a medical waiver related to Plaintiff's medical condition and disability Rheumatoid Arthritis</u>. **Exhibit 1**.

At sometime between April 2, 2018 and April 6, 2018, after Plaintiff spoke with Mr. Bowling and Mr. Nixon, Plaintiff again went to see the school's nurse Darlene Smith regarding the hold on Plaintiff's student account through the Brady Health Center which was because of Plaintiff's medical condition and disability Rheumatoid Arthritis, whichwhich stopped Plaintiff from being able to register for Plaintiff's Summer 2018 and Fall 2018 academic sessions classes. **Exhibit 1**. <u>Plaintiff again explained to Ms. Smith that he cannot get vaccinations because of his medical condition and disability Rheumatoid Arthritis, but for no reason, and unlike when Ms. Smith lifted the hold on Plaintiff's student account through the Brady Health Center in 2017 so he was able to register for his Winter 2017 and Spring 2018 academic sessions classes, Ms. Smith simply refused to lift the hold on Plaintiff's student account through the Brady Health Center, and Plaintiff was stopped from being able to register for his Summer 2018 and Fall 2018 classes at the school. Additionally, Ms. Smith was not sure about the situation and notified other health clinics and asked the other health clinics what to do regarding</u>

Plaintiff's medical condition and disability Rheumatoid Arthritis, which makes Plaintiff medically ineligible to get vaccinations. **Exhibit 1**. Again, and stated above, Plaintiff was enrolled and successfully completed his coursework at Frostburg State University through the Fall 2017, Winter 2017, and Spring 2018 academic sessions without having provided the school with any medical documentation or proof of immunization related to his medical condition and disability Rheumatoid Arthritis. **Exhibit 1**. Additionally, during this conversation Plaintiff had with Ms. Smith at the Brady Health Center, Plaintiff communicated to Ms. Smith a few things. **Exhibit 1**. *First*, Plaintiff offered to Ms. Smith to take online classes only at Frostburg State University for the Fall 2018 academic session so Plaintiff can continue his education and then Plaintiff will transfer out of Frostburg State University after the Fall 2018 academic session, and Plaintiff requested this compromise to the school (take online classes only and then transfer out of the school) after Ms. Smith told Plaintiff that the school's immunization policy does not apply to Frostburg State University students who take online classes only. **Exhibit 1, Exhibit 2**. *Second*, Plaintiff requested to Ms. Smith that Frostburg State University release Plaintiff's academic transcripts to any Higher Education institution(s) that he intends to transfer to for the Winter 2018 and Spring 2019 academic sessions. **Exhibit 1**, **Exhibit 2**. In response, Ms. Smith did the following. *First*, Ms. Smith refused to lift the hold on Plaintiff's student account through the Brady Health Center that was related to Plaintiff's medical condition and disability of Rheumatoid Arthritis, which stopped him from being able to register for his Summer 2018 and Fall 2018 classes. **Exhibit 1, Exhibit 2**. *Second*, Ms. Smith refused to release Plaintiff's academic transcripts in Frostburg State University's possession to other Higher Education institutions which Plaintiff would seek to transfer to for the Fall 2018 and Spring 2019 academic sessions. **Exhibit 1**.

Shortly after Plaintiff met with Mr. Bowling, Mr. Nixon, and with Ms. Smith regarding the hold on his student account through the Brady Health Center, Plaintiff met with the school's Americans with

Disability Act / Equal Employment Opportunity and Immigration Compliance Coordinator Beth Hoffman about Plaintiff's medical condition and disability Rheumatoid Arthritis. **Exhibit 1**. During this conversation, Plaintiff explained to Ms. Hoffman his medical condition and disability which makes Plaintiff medically ineligible to get vaccinations and this being the reason for the hold on Plaintiff's student account through the Brady Health Center. **Exhibit 1**. In response, and like Mr. Nixon did, Ms. Hoffman advised Plaintiff to just get a medical waiver from Plaintiff's doctor and have Plaintiff's doctor send Frostburg State University a medical waiver related to Plaintiff's medical condition and disability Rheumatoid Arthritis. **Exhibit 1**.

Thereafter, and literally within days and at the latest April 10, 2018, Plaintiff's treating rheumatologist and Johns Hopkins Hospital physician, John Miller, M.D., faxed Frostburg State University an April 6, 2018 dated medical waiver on Plaintiff's behalf. **Exhibit 1**. The April 6, 2018 dated medical waiver related directly to Plaintiff's medical condition and disability Rheumatoid Arthritis, and that because of his medical condition and disability, he is medically ineligible for vaccinations. **Exhibit 1, Exhibit 2**. Dr. Miller's April 6, 2018 dated medical waiver is concise, unambiguous, and leaves zero room for differing interpretation,

> To Whom It May Concern:
>
> I have had the pleasure of taking care of Mr. Mallon since March 2018, but his autoimmune condition has required treatment for several years.
>
> Due to his immunocompromised state, Mr. Mallon is not eligible to receive live vaccinations, such as the MMR vaccination.
>
> Please do not hesitate to contact me if you have any questions or concerns.
>
> John Miller
> RE: Mallon, Shane

**Exhibit 1**, **Exhibit 2**.

Related to the hold on his account through the Brady Health Center, on April 9, 2019, Plaintiff emailed Ms. Hoffman and stated,

> "… Can you please let me know that all I want to do is to take online classes in the fall and then I'll transfer. I wanted to finish my education here [, Frostburg State University,] but I'm not going to be allowed no all I'm asking for is if I can take two online classes so my graduation date won't get pushed back costing me more time and money. I don't understand why this would be a problem."

**Exhibit 1**.

The very next day, on April 10, 2018, Ms. Hoffman responded to Plantiff's email, emailed Plaintiff herself, acknowledged her receipt of Dr. Miller's April 6, 2018 dated medical waiver, and stated,

> **<u>"Shane I sent your doctor's letter to Brady Health and left both an email and phone message to request the hold be lifted. Hopefully, it won't take long."</u>**

**Exhibit 1**. (emphasis added).

Also on April 10, 2018 and at 7:36AM EST, President Nowaczyk emailed Plaintiff and told Plaintiff to contact his secretary Sandy Rohrbaugh to set up a time for him and Plaintiff to meet regarding the hold on Plaintiff's student account through the Brady Health Center. **Exhibit 1**. <u>Thereafter, within a couple days, Plaintiff met with President Nowaczyk for a couple minutes and President Nowaczyk told Plaintiff that as long as Plaintiff got the medical note from his doctor related to his medical condition and disability, he will be fine</u>. **Exhibit 1**.

Within a day or two after Plaintiff's meeting with President Nowaczyk, Plaintiff telephoned Ms. Hoffman to see why the hold on his student account through the Brady Health Center had not been lifted, which stopped him from being able to register for his Summer 2018 and Fall 2018 academic sessions classes. **Exhibit 1**. <u>During this telephone conversation, Ms. Hoffman told Plaintiff that she spoke to Darlene Smith and Ms. Smith's position is as follows: **First**, Ms. Smith will not lift the hold</u>

on Plaintiff's student account through the Brady Health Center, which stopped Plaintiff from being able to register for his Summer 2018 and Fall 2018 academic sessions classes. ***Second***, Plaintiff will have to get vaccinations and blood work. ***Third***, Ms. Smith refuses to release Plaintiff's academic transcripts to Higher Education institutions he intends to transfer to after the Fall 2018 academic semester out of "principle". **Exhibit 1, Exhibit 2.**

On April 16, 2018, and within a day or two after Plaintiff's telephone conversation with Ms. Hoffman stated above, Plaintiff emailed Darlene Smith, Tom Bowling, and Beth Hoffman, and stated,

> "...I am writing this letter so that everyone is fully aware of my situation and there is documented proof. I have handed in a medical waiver for vaccinations due to my compromised immune system and have still been denied registration for online classes to which no waiver is needed. I have also been told I would not be able to have access to my transcript so that I could transfer institutions. Darlene Smith is also trying to contact my doctor at Johns Hopkins without my permission. Johns Hopkins has assured me she will not be able to have access to my infraction, I am looking into if this is a HIPPA violation. I am only looking to take two online classes then transfer this way I will be able to use some of my scholarships because I think it's too late to transfer the scholarships to another institution. If you deny me this then I will just transfer institutions this summer but I would need my transcripts. I feel what is happening is unfair and going against your own policy. I will be filing a ADA complaint with the department of justice and have also reached out to the civil rights commission..."

**Exhibit 1**.

Plaintiff was never able to register for his Summer 2018 and Fall 2018 academic sessions classes at Frostburg State University, because the hold on his student account through the Brady Health Center because of his medical condition and disability Rheumatoid Arthritis was never lifted. **Exhibit 1, Exhibit 2**.

iii. ***Plaintiff files his July 27, 2018 disability discrimination complaint against Frostburg State University with the Maryland Higher Education Commission (MHEC).***

On July 27, 2018, Plaintiff filed his disability discrimination complaint against Frostburg State University with the Maryland Higher Education Commission (MHEC). **Exhibit 1**. Therein, when

Plaintiff was asked the question on the complaint form "How would you like to see the complaint resolved?", Plaintiff's hand-written answer was "**I would like to be able to take online classes**". **Exhibit 1**.

On September 7, 2018, Mr. Nixon, on behalf of Frostburg State University, filed its response statement to Plaintiff's July 27, 2018 filed disability discrimination complaint. **Exhibit 1**. Therein, Mr. Nixon not only attached Dr. Miller's April 6, 2018 dated medical waiver related to Plaintiff's medical condition and disability Rheumatoid Arthritis, but also attached the "University of Maryland Immunization Policy" for MMR vaccinations, which states among other things that the Defendant Frostburg State University's students who take online classes only are expressly exempt from the policy, and that the policy applies to Frostburg State University's on-campus students only. **Exhibit 1**. Throughout the course of Plaintiff's enrollment at Frostburg State University, Plaintiff always lived off-campus, and in off-campus housing that has no affiliation with Frostburg State University. **Exhibit 1**. Moreover, as stated above, Plaintiff requested to take online classes only in the Fall 2018 academic semester at Frostburg State University, but Darlene Smith refused to lift the hold on Plaintiff's student account through the Brady Health Center, even when she had this knowledge and after she told Plaintiff that Frostburg State University's vaccinations policy does not apply to its students who register for online classes only. **Exhibit 1**. Finally, Ms. Smith also told Plaintiff that he needs to get meningococcal vaccines, which directly contradicts Maryland law because of Plaintiff's off-campus housing throughout the course of his enrollment at Frostburg State University. **Exhibit 1**.

iv. ***Plaintiff is officially forced out, and kicked out, of his enrollment as an undergraduate student at Frostburg State University because of his disability.***

On or about November 3, 2018, having heard nothing from Frostburg State University regarding Plaintiff's status as a student at Frostburg State University, Plaintiff emailed his former academic supervisor Kenneth Levitt regarding opening his registration for his Winter 2018 academic

session classes at the school. **Exhibit 1**. Mr. Levitt responded to Plaintiff in a November 4, 2018 email and stated,

> "… I'm not listed as your advisor anymore, so I can't make you available to register. I'm copying Tammy Shockey so that she can help you."

**Exhibit 1**.

Thereafter, Plaintiff never received a response from Ms. Shockey regarding his registration for his Winter 2018 academic session classes at Frostburg State University. **Exhibit 1**.

On or about November 8, 2018, Frostburg State University sent Plaintiff a letter which states among other things that Plaintiff was kicked out of Frostburg State University and then readmitted as a student for the Winter 2018 academic session. **Exhibit 1**. Additionally, the letter states that Plaintiff will have to pay the school$150.00 as a deposit for readmission. **Exhibit 1**. Plaintiff also received a November 8, 2018 email from Ms. Shockey that shows the school kicked Plaintiff out of the school. **Exhibit 1**. At the time of this November 8, 2018 letter stated above, since Plaintiff was unable to register for his Summer 2018 and Fall 2018 academic sessions classes at Frostburg State University solely because of the school's conduct (conduct done by the school's President, Vice President of Student Affairs, General Counsel, Nurse, and ADA / EEO and Immigration Compliance Officer towards Plaintiff) he had already transferred out and enrolled as a student at the Community College of Baltimore County ("CCBC") for the Winter 2018 academic session. **Exhibit 1**.

> **v.** ***Plaintiff's suffered damages and losses as a direct and proximate result of the Defendants' intentional disability discrimination against him.***

As a direct and proximate result of the Defendants' conduct that was intentional, willful and malicious disability discrimination against him (the Defendants' agents and/or employees, who were acting within the scope of their agency and/or employment at all times pertinent to Plaintiff's claims) - Ms. Hoffman, Mr. Bowling, President Nowaczyk, Mr. Nixon, and Ms. Smith) Plaintiff was forced to

transfer his federal financial funding and begin an entirely new course requirement and bachelor's degree / master's degree track at first the CCBC, and then where Plaintiff is currently enrolled as an undergraduate student, the University of Baltimore. **Exhibit 1**. When Plaintiff was enrolled as an undergraduate student at Frostburg State University, Plaintiff was receiving $1,500 per academic session, and was intending to complete his bachelor's degree and master's degrees through Frostburg State University's business school in a three-year time period, and was on track to do that. **Exhibit 1**. Additionally, Frostburg State University stopped Plaintiff from being able to take his Summer 2018 and Fall 2018 academic sessions classes because of his medical condition and disability, and he lost essentially an entire year where he expected to continue to pursue Plaintiff's bachelor's and master's degrees through the business school. **Exhibit 1**. He also endured severe pain and suffering, humiliation, and embarrassment. **Exhibit 1**. He also lost his scholarship money for his Higher Education schooling. In fact, Plaintiff was forced to exhaust his student loans and financial aid at Frostburg State University, and Plaintiff's current school, the University of Baltimore, notified him on March 5, 2019 that he may not eligible for financial aid moving forward. **Exhibit 1**. Plaintiff's earning power and earning potential also decreased.

  **B**.  ***Procedural History of Plaintiff's claims against the Defendants. Defendants Frostburg State University and State of Maryland***.

   On or about November 20, 2018, and after Plaintiff filed his July 27, 2018 complaint with the Maryland Higher Education Commission (MHEC) and the Defendants Frostburg State University and State of Maryland submitted their September 7, 2018 response, the Philadelphia Office of Civil Rights (OCR) contacted Plaintiff and advised him that the OCR was investigating Plaintiff's disability discrimination claim against Defendant Frostburg State University. **Exhibit 1**.

On February 15, 2019, Plaintiff mailed his notice of claim pursuant to the Maryland Tort Claims Act to the State of Maryland. See the paperwork related to the notice of claim, collectively attached as "**Exhibit 4**".

On March 6, 2019, Plaintiff had a mediation through the OCR regarding his disability discrimination claims against the Defendants Frostburg State University and State of Maryland, but the mediation was unsuccessful. **Exhibit 1**; *see also* the Declaration of John Leppler, attached as **"Exhibit 3"**. During the mediation, the Defendants' attorney, Elizabeth Rivera, Esq., directed Mr. Nixon to state to Plaintiff, undersigned counsel, and the mediator that Mr. Nixon that he did not offer legal advice to Plaintiff when Mr. Nixon advised Plaintiff to get a medical waiver related to his medical condition and disability Rheumatoid Arthritis. **Exhibit 3**.

Moreover, the Defendants supported their motion with April 18, 2019 signed declarations by Mr. Nixon and Ms. Smith, and an April 17, 2019 signed declaration by Ms. Moffett. Plaintiff has a response to each declaration. *See* **Exhibit 2.**

## II.     STANDARD OF REVIEW

A.     *Standard of Review related to a Fed. R. Civ. P. 12b(6) motion to dismiss*.

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro, et al.*, 178 F.3d (4th Cir. 1999)(citing *Republic Party v. Martin*, 980 F.2d 943, 952 (4th Cir 1992)). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *Id*. (citing *Republic Party v. Martin*, 980 F.2d 943, 952 (4th Cir 1992)). Furthermore, a Rule 12(b)(6)motion is

testing the sufficiency of a civil rights complaint, "we [the Court], must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged. Id*. (citing *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)(internal quotations marks omitted)(emphasis added)).

      **B**.     *Standard of Review related to a Fed. R. Civ. P. 56(a) motion for summary judgmen*t.

      When reviewing a motion for summary judgment, the Court must view the facts and inferences drawn from the facts in the light most favorable to the nonmoving party. *Evans v. Technologies Applications & Service Company*, 80 F.3d 954 (4th Cir. 1996)(citing *Matsushita Elc. Indus. Co. v. Zenith Radio Corp*., 457 US. 574, 587-88 (1986)(also citing Nguyen v. CNA Corp. 44 F.3d 234 (4ᵗʰ Cir. 1995)). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id*. (citing Fed. R. Civ. P. 56(c)(also citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

      Additionally, the Court must take special care when considering a motion for summary judgment in a discrimination case because motive is often a critical issue, summary judgment is appropriate if the plaintiff cannot prevail as a matter of law. *Id*. (citing <u>Ballinger v. North Carolina Agric. Extension Serv.</u>, 815 F.2d 1001 (4ᵗʰ Cir.), cert. Denied, 484 U.S. 897 (1987)). However, if after reviewing the record as a whole, if the Court finds that a reasonable jury could return a verdict for the Plaintiff, then a genuine factual dispute exists and this Court must deem summary judgment improper. *Id*. (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

      Additionally, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact. *Halperin v. Abacus Technology Corporation*, 128 F.3d 191 (4th Cir. 1997) (citing Fed.R.Civ.P. 56)(also citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III.     THE LAW RELATED TO PLAINTIFF'S CLAIMS

**A.     *Plaintiff's intentional disability discrimination claims*.**

For Plaintiff to establish a *prima facie* case under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, Plaintiff must prove: (1) that he has a disability; (2) that he is an otherwise qualified individual for the benefit in question; and (3) that Plaintiff was excluded from the benefit due to discrimination solely on the basis of the disability. *Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261(4th Cir. 1995)(citing *Gates v. Rowland*, 39 F.3d 1439, 1445(9th Cir 1994)).

Additionally, Plaintiff can prove his discrimination through direct evidence or circumstantial evidence. *Halperin v. Abacus Technology Corporation*, 128 F.3d 191 (4th Cir. 1997). If Plaintiff cannot prove discrimination through direct evidence, Plaintiff must prove discrimination through circumstantial evidence and satisfy the *McDonnell Douglass* three-step proof scheme. Id. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93(1973)). First, and related to this case, Plaintiff must establish, by a preponderance of the evidence, a *prima facie* case of disability discrimination. *Id*. Once established, the burden then shifts to the Defendants to rebut the presumption of discrimination by producing evidence that plaintiff was disallowed to register for his Summer 2018 and Fall 2018 academic sessions classes and kicked out of Frostburg State University for a legitimate, nondiscriminatory reason. See *Id*. (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Thereafter, if the Defendants actually set forth a legitimate, non-discriminatory reason for doing these things to Plaintiff, Plaintiff must prove the Defendants' legitimate nondiscriminatory

reasons are pretext for intentional disability discrimination against Plaintiff. *Id*. (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-11 (1993)).

**B**.    ***Plaintiff's intentional failure to accommodate claims***.

In order for the Plaintiff to establish a *prima facie* case of failure to accommodate under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, here, Plaintiff must show that: (1) he is an individual with a disability within the meaning of the laws stated above; (2) that the Defendants had notice of his disability; (3) that with a reasonable accommodation Plaintiff could perform the essential functions of his job; and (4) that the Defendants refused to provide Plaintiff a reasonable accommodation, and the reasonable accommodation would not have imposed an undue hardship on the Defendants. *Fleetwood v. Harford Systems, Inc*., 380 F. Supp.d 688 (D. Md. 2005) (citing *Rhoads v. Federal Deposit Insurance Corporation*, 257 F.3d 373 (4th Cir. 2001)).

Additionally, the Defendants and the Plaintiff should engage in an interactive process to identify a reasonable accommodation. *Id*. (citing *Bryant v. Better Business Bureau of Greater Maryland, Inc., et al*., 923 F. Supp 720 (D. Md. 1996)). Additionally, the Defendants should take the following steps to accomplish this goal: (1) analyze the particular job involved and determine its purpose and essential functions; (2) consult with the employee to ascertain the precise job-related limitations imposed by the disability and how they could be overcome; (3) in consultation with the employee, identify potential accommodations and assess the effectiveness of each in enabling the employee to perform his functions; and (4) consider the preference of the employee and implement the accommodation that is most appropriate for both the employee and employer. *Id*. (citing *Bryant v. Better Business Bureau of Greater Maryland, Inc., et al*., 923 F.Supp 720, 737 (D. Md. 1996)).

Additionally, responsibility for dethroning an accommodation, however, is shared between the Plaintiff and the Defendants. *Id*. (citing *May v. Roadway Express, Inc*., 221 F. Supp. 2d. 623, 627-28

(D. Md. 2002)). A party that obstructs or delays the interactive process, or simply fails to communicate, is not acting in good faith to find a solution. *Id*. (citing *Bultemeyer v. Wayne Cmty. Sch.*, 100 F.2d 1281, 1285 (7th Cir. 1996)). Nevertheless, the Defendants cannot escape liability simply because Plaintiff does not suggest a particular reasonable accommodation that would assist him. *Id*. (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d. 396, 317 (3d. Cir. 1999)). The Defendants must work with Plaintiff to determine what accommodation would help. *Id*. Similarly, Plaintiff cannot prevail simply by demonstrating that Defendants failed to engage in the interactive process, but Plaintiff must also show that this failure to engage in the process resulted in the failure to find an appropriate accommodation. *Id*. (citing *Scott v. Montgomery County Gov't*, 164 F. Supp. 2D 502, 508 (D. Md. 2001)).

## IV.     ARGUMENT

### A.     *Plaintiff sufficiently plead his intentional disability discrimination claims against the Defendants, and there are genuine issues of material facts regarding the same.*

### 1.     *Plaintiff has established a prima facie case of intentional disability discrimination*

*First*, Plaintiff has sufficiently shown that he has a disability within the meaning of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Plaintiff has sufficiently shown that he has a physical or mental impairment, record of such impairment, or regarded as having such an impairment by the Defendants that substantially limits one or more of his major life activities, including but not limited to learning and working. *See Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249 (4th Cir. 2006); *see also Hooven-Lewis v. Caldera*, 249 F.3d 259 (2001). Here, Plaintiff's medical condition and disability Rheumatoid Arthritis has literally prevented him from being able to continue his employment at Baltimore Gas and Electric, where he worked for eight years as an underground gas mechanic, and within the job, he would fix fixing gas leaks and installing gas mains and surfaces. In fact, the Defendants attached to their motion as an Exhibit, under seal, Plaintiff's Social Security

Administration benefits from Baltimore Gas an Electric having put him on long-term disability because of his medical condition and disability Rheumatoid Arthritis. Additionally, the Defendants regarded Plaintiff as having a medical condition and disability Rheumatoid Arthritis that required him to obtain medical documentation among other things for his disability (Plaintiff's immuncompromised state preventing him from getting vaccinations).

**Second**, Plaintiff is an "otherwise qualified" individual within the meaning of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. *See Tyndall v. National Education Centers, Incorporated of California*, 31 F.3d 209 (4th Cir. 1994)("… only persons who are "qualified" for the job in question may state a claim for discrimination. The ADA defines "qualified individual with a disability" as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.); *see also Doe v. University of Maryland Medical System Corporation, et al.*, 50 F.3d 12621 (4th Cir. 1995)). Here, Plaintiff is a 35-year-old male as an undergraduate student in Frostburg State University's business program, and was on track to complete his bachelor's degree and master's degree through the program. As stated herein *ad nausea*, throughout the course of Plaintiff's enrollment as an undergraduate student at Frostburg State University, Plaintiff had a disability – Plaintiff's medical condition and disability Rheumatoid Arthritis. Plaintiff received financial aid grant money and a scholarship to complete this program. Throughout the course of Plaintiff's enrollment at Frostburg State University, Plaintiff successfully completed his coursework, was never on academic probation, and lived off-campus (Plaintiff's housing had zero affiliation with Frostburg State University). **Exhibit 1**. Plaintiff successfully completed his coursework at Frostburg State University in the Fall 2017, Winter 2017, and Spring 2018 academic semesters, and before the intentional, malicious and willful disability discrimination perpetrated by the Defendants towards him, Plaintiff was well on track to

complete his bachelor's and master's degrees through the program he was enrolled in at Frostburg State University's business school. Thus, Plaintiff was able to perform the essential functions of his job, an undergraduate student enrolled in Frostburg State University's business school, with or without a reasonable accommodation. **Exhibit 1**, **Exhibit 2**.

a. *Plaintiff is an "otherwise qualified" individual under ADA and Section 504 of the Rehabilitation Act*.

*First*, the alleged "debt" for $1,000 Plaintiff had related to his account, was in fact, a mistake of Frostburg State University. **Exhibit 1**, **Exhibit 2**. Frostburg State University's employee Janelle Moffett acknowledged the debt on Plaintiff's account as a mistake, that should have been taken out of Plaintiff's financial aid grant money for the Spring 2018 academic semester, but never was and the mistake was realized in March 2018. *See* **Exhibit 1**. Frostburg State University then indicated that it would take the $1,000 out of Plaintiff's Fall 2018 federal financial aid grant money, the school never did, because the school Plaintiff out before that time anyway. **Exhibit 1**, **Exhibit 2**. Further, Plaintiff eventually paid the $1,000 out-of-pocket a week before the Fall 2018 academic semester at Frostburg State University. **Exhibit 1**.

*Second*, regarding the "medical documentation" that Plaintiff needed to provide the Defendants related to his medical condition and Rheumatoid Arthritis, <u>, Frostburg State University's General Counsel Bradford Nixon, Esq., Frostburg State University's Vice President of Student Affairs Thomas Bowling, Frostburg State University's President Ronald Nowaczyk, and Frostburg State University's ADA / EEO and Immigration Compliance Coordinator Beth Hoffman, and potentially Frostburg State University's nurse Darlene Smith as well, all advised Plaintiff to get a medical waiver related to his medical condition and disability Rheumatoid Arthritis in the first two weeks of April 2018.</u> **Exhibit 1**, **Exhibit 2**. <u>Plaintiff then had his Johns Hopkins Hospital treating rheumatologist John Miller, M.D. fax the medical waiver to Frostburg State University which was done within days of talking to these five</u>

people, with Beth Hoffman having received it on April 10, 2018. **Exhibit 1**, **Exhibit 2**. Thereafter, Ms. Hoffman saw the medical waiver and told Plaintiff he was fine, and again, President Nowaczyk told Plaintiff to just get a "medical note" from your doctor related to your medical condition and disability Rheumatoid Arthritis, and you will be fine.

Moreover, and clearly, Plaintiff's need to provide medical documentation regarding his medical condition and disability Rheumatoid Arthritis was a non-issue when Plaintiff first enrolled at Frostburg State University, because when Plaintiff notified, explained, and communicated his medical condition and disability Rheumatoid Arthritis to Darlene Smith on or about October 24, 2017, Ms. Smith understood the medical condition and disability Rheumatoid Arthritis, and lifted the hold on his student account through the Brady Health Center which stopped Plaintiff initially from registering for his Winter 2017 and Spring 2018 classes. *See* **Exhibit 1**. However, for literally no reason at all and which only can be inferred as discrimination, Frostburg State University refused to lift the hold through the Brady Health Center which stopped Plaintiff from being able to register for his Summer 2018 and Fall 2018 classes, and the hold on his student account through the Brady Health Center was for the exact same thing. The Defendants' mention of a tetanus vaccination in their motion (Plaintiff did get a tetanus vaccination approximately 6 years before his enrollment at the school) has zero to do with the medical documentation Plaintiff needed to actually provide the Defendants, and with his status as an "otherwise qualified" individual with a disability. *See* **Exhibit 1**, **Exhibit 2**.

2.    *Plaintiff has sufficiently shown pretext and discriminatory animus.*

The Defendants' justifications couched as "compelling reasons" for its conduct towards Plaintiff is: (1) having students pay their debts; and (2) provide proof of immunization to control diseases among its student population. =***First***, as stated above (*See* Section IV(A)(1)(a) of this motion), Plaintiff never had a "debt" issue at Frostburg State University. The alleged "debt" issue was the Defendants'

own mistake, where the $1,000 "debt" was supposed to be taken out by Frostburg State University of Plaintiff's federal financial aid grant money for Plaintiff's Spring 2018 semester. ***Second***, as stated above, (*See* Section IV(A)(1)(a) of this motion), Plaintiff provided all of the medical documentation that Frostburg State University's highest level officials directed him to, and provided the medical documentation to Frostburg State University within days of its highest level officials directing him to do so. ***See*** **Exhibit 1, Exhibit 2**. Additionally, Frostburg State University allowed Plaintiff to not provide any proof of immunization, medical documentation, and the like, through an entire academic year at Frostburg State University, where Plaintiff successfully completed his coursework at Frostburg State University in the Fall 2017, Winter 2017, and Spring 2018 academic sessions without having the need to provide anything to the school related to his medical condition and disability Rheumatoid Arthritis, and his medical ineligibility to get vaccinations because of the medical condition and disability. Moreover, at the time pertinent to Plaintiff's claims, Frostburg State University likely had no immunization policy in place related to Plaintiff's medical condition and disability Rheumatoid Arthritis, and which is why the school's nurse, general counsel, president, vice president of student affairs, and ADA / EEO director directed and advised Plaintiff to get a medical waiver related to his medical condition and disability Rheumatoid Arthritis, ***because they did not know what else to do***. *See* **Exhibit 1**, **Exhibit 2** (Frostburg State University's immunization policy attached as "Exhibit A" to his April 18, 2019 dated declaration was not submitted as an Exhibit to Frostburg State University's September 7, 2018 response statement to Plaintiff's July 27, 2018 filed discrimination complaint with the MHEC, and which was revised as late as October 2018).

The Defendants' purported legitimate non-discriminatory reasons for its conduct towards Plaintiff is pretext for discriminatory animus. The legitimate, nondiscriminatory reasons are pretext for, in summary, the following**:** **<u>The reckless, ignorant, and incompetent lack of communication within</u>**

**the high-level administration of Frostburg State University regarding Plaintiff's medical condition and disability Rheumatoid Arthritis (President Ronald Nowaczyk, General Counsel Bradford Nixon, Esq., Vice President of Student Affairs Tom Bowling, ADA / EEO and immigration Compliance Coordinator Ms. Hoffman, and the Brady Health Center's director and nurse, Ms. Smith), and the Defendants' intentional, malicious, and willful disability discrimination against him.** The Defendants saw there was a problem with Plaintiff's medical condition and disability Rheumatoid Arthritis, and related to this, saw that there was an issue with their own policies related to Plaintiff's medical condition and disability Rheumatoid Arthritis, even after these five persons directed Plaintiff to get a medical waiver, which he did within days, the Defendants recognized an issue internally, and the inference is the Defendants engaged in intentional, willful, and malicious disability discrimination against him. Additionally, this clearly was not that big of an issue to the Defendantsclearly not that big of an issue to the Defendants because Plaintiff had successfully completed his coursework at Frostburg State University for the Fall 2017, Winter 2017 and Spring 2018 academic semesters without providing the school any documentation regarding his medical condition and disability Rheumatoid Arthritis and that he is medically ineligible to get vaccinations because of the medical condition and disability.

**3**.    ***The Defendants' case law in support of its position regarding the Plaintiff's intentional disability discrimination claims factually and/or legally distinguishable from this case***.

The Defendants' cited case law to support its argument that their motion to dismiss, or in the alternative, motion for summary judgment, should be granted, as it relates to the above caption, are wholly distinguishable to this case.

***First***, Defendants' case law *that is persuasive and/or binding authority* to argue Plaintiff cannot show he was otherwise Qualified Due to his Debt is the following,

*Halpern v. Wake Forest University Health Sciences*, 669 F.3d 454 (2012) – The plaintiff was enrolled in the defendant's medical program, and was diagnosed with ADHD. The plaintiff failed to disclose his ADHD diagnosis, and he did not request any disability-related accommodations. The plaintiff had documented problems with professionalism as soon as he arrived at the medical program, being documented as having acted in a "very abusive" manner, and "far and beyond worse" than anything they had experienced with other students. Additionally, during the fall of his second year of medical school, the was absent from a small group session without notice. The plaintiff falsely represented to faculty members inquiring into his absence that he had given advance notice to the group facilitators that he would not be present.

*Zingher v. Yacavone*, 30 F. Supp. 2D 446 (1997) – the Plaintiff has a learning disability. The plaintiff was discharged from his employer (a bakery) because the plaintiff, for no reason at all, canceled a meeting that was set up between a computer company and the plaintiff's supervisor (the owner of the bakery).

*Bell-Kachelski v. Mich. Protection & Advocacy Serv.*, 2018 WL 6823769 (6th Cir. 2018) - Although the Court dismissed the plaintiff's ADA claim because the plaintiff failed to comply the Michigan Rehabilitative Service's (MRS) individualized employment plan (IPE), the Court dismissed it because the plaintiff was flat out ignorant and was lying. The plaintiff denied in her response motion to dimiss that MRS advised her the iporatnce of developing and signing an IPE, the plaintiff admitted in thirteen separate instances where she fully understood the importance of the IPE at issue.

  **Second**, Defendants' case law *that is persuasive and/or binding authority* to argue Plaintiff

cannot show he was otherwise qualified due to his failure to supply documentation of his tetanus

vaccination is the following,

*Rice v. Har-Co Credit Union,2014* WL 468669 (D. Md. Sept. 17, 2014) – The plaintiff was a mess when it came to complying with his employer's attendance policy. The plaintiff was consistently absent from work, and requested repeated abscesses thereafter on an unpaid basis. Thereafter, his employer requested that he provide his employer with a short-term disability form with a certification from a doctor to return to work, and that any additional absences from work would be contingent on him providing his employer the certification form. Plaintiff never provided the form, and continued to take days off from work.

  **Third**, Defendants' case law *that is persuasive and/or binding authority* to argue Plaintiff

cannot establish both pretext and discriminatory animus is the following,

*Abilt v. Central Intelligence Agency*, 848 F.3d 305 (2017)– the Court recognized the legitimate nondiscriminatory interest of national security, and disclosure of privileged information from the CIA, which was related to national security.

*Hannah v. Coats*, 916 F.3d 327 (4th Cir. 2019)– The Court dismissed the plaintiff's claims because of the plaintiff's repeated problems with her performance at work, and specifically her attendance

(frequent absences and late arrivals). Additionally, her employer did not know that the plaintiff had a medical problem. Further, the plaintiff's co-workers believed that her scheduled had become "erratic". Additionally, the plaintiff's co-workers asserted that the plaintiff would be unreachable for hours during work hours, and often missing and failing to return "repeated phone calls to her cell and home phone".

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)- This case is favorable to the plaintiff. At trial, the plaintiff prevailed against his employer for his age discrimination case. The U.S. Supreme Court dealt with a single issue in this case, and ruled that [a] plaintiff's *prima facie* case of discrimination, combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, may be adequate to sustain a finding of liability for intentional discrimination under the ADEA."

*Schuler v. University of Denver*, 2014 WL 4948113 (D. Colo. Oct. 1, 2014)– this is a Colorado federal court district case, where the Plaintiff managed to not pay his housing costs over nine-thousand dollars. Moreover, the plaintiff never actually lost his scholarship money, and in fact, as potentially trying to accommodate the plaintiff, the defendant converted his $1,000 he was receiving per quarter, to $1,333.6 per quarter. Finally, the Court stated, "There is no evidence in the record showing or supporting an inference that DU [, the defendant,] was motivated by Schuler's [, the plaintiff] disability or acted with deliberate indifference in handling his financial aid.

*Madock v. McHugh*, 2011 WL 3654460 (D. Md. Aug. 11, 2011) – The plaintiff was employed at the United States Arm Medical Research Institute for Infectious Diseases ("USAMRIID"). At her job, the plaintiff worked in a laboratory with various patients with infectious diseases all of the time, and as part of the requirement for this job, the plaintiff was required to participate in a "Specialized Immunization Program ("SIP"). Moreover, this was a wrongful termination case, and the Court dismissed the plaintiff's claims because the Court found that the defendant (her employer) never terminated from her job and she never left her job ("In sum, plaintiff's Complaint contains no facts amounting to allegations of "actual discharge").

    **B.**     *Plaintiff sufficiently plead his failure to accommodate claims against the Defendants, and there are genuine issues of material facts regarding the same*.

    **1**.     *Plaintiff has a disability and is a qualified individual under the Americans with Disabilities Act and Section 504 of the Rehabilitation Ac*t.

    Plaintiff fully incorporates by reference, and as if stated below, Section IV(A)(1) and Section

IV(A)(1)(a) of this motion, along with Section I – Section I(B) of this motion. There is no question

Plaintiff has a disability and is an "otherwise qualified" individual under the Americans with

Disabilities Act and Section 504 of the Rehabilitation Act.

    **2**.     *Plaintiff clearly placed the Defendants on notice of his disability as late as on or about October 24, 2017*.

Plaintiff discussed and communicated, in person, his disability (his medical condition Rheumatoid Arthritis), and because of his disability he cannot get vaccinations, to Frostburg State University's nurse Darlene Smith at the Brady Health Center, and as early as on or about October 24, 2017. However, it did not stop there. *See* **Exhibit 1**, and **Exhibit 2**. Additionally, between on or about April 1, 2018 and on or about April 12, 2018, Plaintiff discussed and communicated, in person, his disability (his medical condition Rheumatoid Arthritis), and because of his disability he cannot get vaccinations, to the following persons – President Ronald Nowaczyk, General Counsel Bradford Nixon, Esq., ADA / EEO Director Beth Hoffman, and Vice President of Student Affairs Thomas Bowling. **Exhibit 1**, **Exhibit 2** Additionally, Frostburg State University received his Johns Hopkins Hospital treating rheumatologist's Dr. Miller's April 6, 2018 dated medical waiver as late as April 10, 2018. **Exhibit 1**, **Exhibit 2.** Thus, the record evidence shows the Defendants had and were placed on sufficient notice regarding Plaintiff's medical condition and disability Rheumatoid Arthritis.

3. ***The Defendants offered no reasonable accommodations to the Plaintiff related to his medical condition and disability Rheumatoid Arthritis***.

Regarding Plaintiff's claims, the Defendants provided Plaintiff with two options: (1) obtaining a medical waiver from his doctor for proof of immunization: and (2) have him sign a philosophical waiver and require him to get blood work and get certain vaccinations. **Exhibit 2**. The record is clear – Plaintiff chose the first option the Defendants gave him and complied with the option within days of the request. **Exhibit 1**, **Exhibit 2**. The record is clear with what happened with this. At the direction and advisement of Frostburg State University's nurse, the President, the Vice President of Student Affairs, the General Counsel, and the ADA / EEO director in early April 2018, on April 10, 2018, Plaintiff's Johns Hopkins Hospital treating rheumatologist Dr. Miller faxed the April 6, 2018 dated medical waiver regarding Plaintiff's disability to the school. **Exhibit 1**, **Exhibit 2**. However, after

Plaintiff provided the medical waiver to school, the Defendants changed their mind and decided this is not what they are looking for, without any support and reason for doing so. See generally **Exhibit 1**, **Exhibit 2**.

Thus, Plaintiff now has the other option available, which is what the Defendants assert are "reasonable accommodations".  - have Plaintiff obtain his childhood immunization records, take a blood test, get certain vaccinations, and sign a philosophical waiver that as it was drafted provide Frostburg State University to keep Plaintiff off-campus at its will and discretion. **Exhibit 1, Exhibit 2** **None of this is reasonable.** *First*, as just stated, the Defendants tried to get Plaintiff to sign a philosophical waiver for vaccinations that Maryland law does not require persons to have, and the waiver as drafted and provided to Plaintiff gave the school the right to exclude Plaintiff from campus at its will and discretion, and not just in times of a disease outbreak *See* **Exhibit 2**. *Second*, Plaintiff attempted to obtain records of childhood vaccinations and he tried to comply with the request to the best of his ability. **Exhibit 2**. Plaintiff contacted his primary care physician and his primary care physician told him that he did not have any records. *See* **Exhibit 2**. Plaintiff then told Darlene Smith that he could not obtain any records, and then Ms. Smith, after telling Plaintiff that because of his age he can unlikely find his childhood vaccinations records, forced Plaintiff to get vaccinations and blood work. **Exhibit 2**. This goes against the Center for Disease Control and Prevention (CDC) policies, and if Plaintiff were to actually get revaccinated, given his immunocompromised state, he may go into shock or die. *See* **Exhibit 2**. Thus, the Defendants decided that the first accommodation they provided Plaintiff and which Plaintiff timely completed (the medical waiver), was now no good. *See* **Exhibit 1**, **Exhibit 2**. The Defendants' purported other accommodations, for the reasons stated above, are unreasonable.

Alternatively, the Defendants have actual reasonable accommodations available to provide Plaintiff,  even after Plaintiff complied within days with one of the accommodations the Defendants offered him (the medical waiver). What would have been reasonable is simply leaving Plaintiff alone, or properly executing a HIPAA release and for the Defendants to obtain permission from Plaintiff to obtain his medical records from Plaintiff's Johns Hopkins Hospital treating rheumatologist Dr. Miller. Or, in the alternative, and as the Defendants started doing as late as November 2018 when they re-admitted Plaintiff into Frostburg State University and requiring Plaintiff to pay $150.00 for re-admission, permit Plaintiff to take online classes only at the school. *See* **Exhibit 1**.  These accommodations available to the Defendants to provide Plaintiff because why? –-- the Defendants must not have believed Plaintiff's medical condition and disability Rheumatoid Arthritis was that big of an issue (danger to him or danger to the school community), since the Defendants knew of his medical condition and disability Rheumatoid Arthritis as late as October 24, 2017 and permitted Plaintiff to complete his Fall 2017, Winter 2017, and Spring 2018 coursework at Frostburg State University without proof of immunization or providing the Defendants any medical documentation related to his medical condition and disability. **Exhibit 1**, **Exhibit 2**. Thus, for these reasons, the Defendants failed to accommodate Plaintiff, and any of the Defendants' reasonable accommodations available to the Defendants that they could have and should have the provided the Plaintiff would not have imposed an undue hardship on them.

4.    ***Plaintiff plausibly pleaded his failure to accommodate claims, and there genuine issues of material facts to the same.***

Plaintiff fully incorporates by reference as if fully set forth below Section IV(B)(3), as if fully set forth below. Moreover, the Defendants in their motion state Plaintiff's request to take online classes only was a "solution". **This is false**. After Darlene Smith refused to lift the hold on Plaintiff's student account through the Brady Health Center so Plaintiff could register for his Summer 2018 and Fall 2018

academic semester classes, and after Ms. Smith told Plaintiff that the school's immunization policy does not apply to students who take online classes only, Plaintiff offered as a compromise to Ms. Smith that he would take two online classes only in the Fall 2018 academic session and then transfer out of this school. **Exhibit 1**, **Exhibit 2**. However, in response and as stated above and after Plaintiff provided the medical waiver to the school as directed by the school's President, General Counsel, and ADA / EEO Compliance Officer,, Ms. Smith still refused to lift the hold on Plaintiff's student account through the Brady Health Center, forced Plaintiff to get vaccinations and blood work, and refused to release his transcripts to other Higher Education institutions Plaintiff may seek to transfer to out of "principle". **Exhibit 1**, **Exhibit 2**. For these reasons, Plaintiff's unilateral offer to take two online classes was not a "solution", but a last ditch ever by Plaintiff to figure out a way where he would not have to pay for his schooling out-of-pocket, and at the same time transfer out of the school that was, discriminating against him because of his medical condition and Rheumatoid Arthritis, even after he was enrolled at the school for an entire academic year and his disability was a non-issue…and the Defendants knew about it. **Exhibit 1**, **Exhibit 2**. If the Defendants actually provided Plaintiff a reasonable accommodation, instead of pulling out on an accommodation they provided him which he complied with (the medical waiver) and then asked him to get a philosophical waiver that keeps him off campus at the school's will and discretion, and then required Plaintiff asked him to get vaccinations and blood work which because of his disability which could cause him to go into shock and die, given his immunocompromised state which was before the Defendants directed Plaintiff to get blood work, Plaintiff would likely still be enrolled at Frostburg State University obtaining his bachelor's and master's degrees through Frostburg State University's program in the business school, and not bringing his disability discrimination and failure to accommodate claims. **Exhibit 1**, **Exhibit 2**. However, here, the Defendants' failure to accommodate is solely because of his medical condition and disability

Rheumatoid Arthritis. After Plaintiff complied with the orders of five individuals at Frostburg State University who are considered by any person to be "Upper Administration / Management of Frostburg State University" the Defendants refused to allow the Plaintiff to continue his education at Frostburg State University, by failing to allow him to register for his Summer 2018 and Fall 2018 classes and kicked him out of the school.

     a.    ***The Defendants failed to engage in an interactive process.***

As stated above, after the Defendants decided Plaintiff's medical waiver that the school's General Counsel, ADA / EEO Compliance Coordinator and President directed Plaintiff to get for them and he provided them within days was no good anymore, the Defendants did nothing more. Instead of figuring out a way the Defendants could obtain Plaintiff's medical records reasonably, the Defendants forced him to first get vaccinations, which could cause him to go into shock and die, or have him sign a philosophical waiver which would keep Plaintiff off-campus at the school's will and discretion. Exhibit 1, Exhibit 2. Then, for no reason at all,, the Defendants changed their mind and told Plaintiff that he could get blood work instead of getting vaccinations. <u>The Defendants gave Plaintiff all of these directions after Plaintiff first spoke with the school's President, Vice President, General Counsel, and ADA / EEO Compliance Coordinator and they all directed him to get a medical waiver related to his medical condition and disability Rheumatoid Arthritis, which Plaintiff did within days of the directions</u>. <u>Again, this is also after Plaintiff successfully completed his coursework at Frostburg Staet University for the Fall 2017, Winter 2017, and Spring 2018 semesters without providing the school with proof of immunity and any medical documentation related to his medical condition and disability Rheumatoid Arthritis.</u>

The Defendants' lack of engagement in the interactive process forced ***Plaintiff to, literally, first try to compromise with the school.*** **Exhibit 1, Exhibit 2.** Plaintiff**,** having realized that Frostburg the

school will not lift the hold through the Brady Health Center and register for his Summer 2018 and Fall 2018 academic sessions classes, unilaterally offered to the school to take two online classes at the school so he could still use his grant money towards his education and not pay out-of-pocket, and then transfer out of the school. **Exhibit 1**, **Exhibit 2**. However, after Plaintiff offered this option to Darlene Smith, Ms. Smith still refused to lift the hold on his student account so he could register for his Fall 2018 and Spring 2018 classes, compelled Plaintiff to get vaccinations and blood work, and refused to and release his transcripts to other Higher Education Institutions Plaintiff would seek to to transfer to out of "principle". **Exhibit 1**, **Exhibit 2**. The record at this stage of litigation shows the Defendants grossly failed to engage in the interactive process with Plaintiff regarding his request for a reasonable accommodation to stay enrolled as an undergraduate student at Frostburg State University. Thus, and for all the reasons stated above, Plaintiff's failure to accommodate claims against the Defendants must not be dismissed.

5. ***The Defendants' case law in support of its position regarding Plaintiff's failure to accommodate claims is factually and/or legally distinguishable from this case***.

The Defendants' cited case law to support its argument that their motion to dismiss, or in the alternative, motion for summary judgment, should be granted, as it relates to the above caption, are wholly distinguishable from this case. ***First***, Defendants' case law *that is persuasive and/or binding authority* to argue Plaintiff cannot show that Plaintiff is not an "otherwise qualified" individual with a disability, Plaintiff incorporates by reference and as if fully set forth below Section IV(A)(4) of this motion. ***Second***, Defendants' case law *that is persuasive and/or binding authority* to argue Frostburg State offered Reasonable Accommodations is the following,

*Rubino v. New Action Mobile Industries, LLC*, 44 F. Supp. 3D 616 (D. Md. 2014) – This was an employment discrimination case. The Court dismissed the plaintiff's failure to accommodate claim because the plaintiff in his Complaint did not provide the Court a cursory description, of any kind, of what the plaintiff's job entails.

*Adams v. Anne Arundel County Public Schools*, 789 F.3d 422 (4th Cir. 2015) – The plaintiff in this case involved a school principal, where in the record, the plaintiff had an allegation of attacking a student against him. However, related to the reasonable accommodation claim, the Court concluded the plaintiff's employers accommodations were reasonable because, among other things, the accommodations complied with the advice of the plaintiff's doctors.

*Hannah v. Coats,* 916 F.3d 327 (4th Cir. 2019)– The Court dismissed the plaintiff's claims because of the plaintiff's repeated problems with her performance at work, and specifically her attendance (frequent absences and late arrivals). Additionally, her employer did not know that the plaintiff had a medical problem. Further, the plaintiff's co-workers believed that her scheduled had become "erratic". Additionally, the plaintiff's co-workers asserted that the plaintiff would be unreachable for hours during work hours, and often missing and failing to return "repeated phone calls to her cell and home phone".

*Thomas v. The City of Annapolis*, 2018 WL 4206951 (D. Md. Sept. 4 2018) – This was an employment discrimination case brought by a police officer. The police officer's requested accommodation should be to place him on light duty or modified duty, the police officer offered no evidence to show that a position of light duty of modified duty for the police officer existed.

*Brady v. Bd. of Educ. Prince George's Cnty* – The plaintiff was a teacher and brought a failure accommodate claim, among others, against her employer, the board of education for Prince George's County. The Court found that a reasonable accommodation could not be made because of the plaintiff's unreasonable actions – Plaintiff was requesting sick days from work, which started as simply requesting half-sick days in 2013, and this increased to the plaintiff requesting and missing entire weeks of work in the 2014-2015 school year.

   **Third**,  Defendants' case law *that is persuasive and/or binding authority* to argue the Plaintiff

failed to sufficiently plead his failure to accommodate claims because Plaintiff cannot prove 'but-for'

causation is as follows,

*Jeandron v. Bd. of Regents of Univ. Sys. Of Md.*, 510 F. App'x 223 (4th Cir. 2013) - The plaintiff was enrolled as a PhD. Student. The Court dismissed the plaintiff's claims because the simply did not register for classes in the year 2008, and the school terminated him from the PhD program. The Court, however, went into great length to show that the only record before the Court to demonstrate why the plaintiff did not register per the school's policy is a self-serving affidavit, and nothing more. Moreover, there was nothing in the record to suggest that the plaintiff actively communicated with the defendant to try to workout the alleged financial hold on his account that prevented him form not register per the school's policy.

*Davis v. Univ. of No. Carolina*, 263 F.3d 95 (4th Cir. 2001)– The plaintiff brought claims related to the defendant's failure to accommodate er in a teacher certification program she wanted to do, which would allow her to teach children. During the program, the plaintiff had issues – her Professor thought she was plagiarizing, and she was distributing business cards where she held herself out to already have

obtained a Master's degree. Moreover, the plaintiff's professors were actively concerned about her inappropriate and aggressive behavior in classes.

      **C.**     ***Plaintiff must be able to claim damages for lost pay.***

Plaintiff was enrolled at Frostburg State University's business school, and was on track to obtain his bachelor's and master's degrees in three years through the business school. Presently, and because of the intentional disability discrimination and failure to accommodate perpetrated by the Defendants against Plaintiff, he is enrolled in a general studies program at the University of Baltimore, and trying to obtain his bachelor's degree. **Exhibit 1**. However, this may not even be possible because Plaintiff is running out of his federal financial aid grant money to complete his degree, and he lost his scholarship money, which he had while enrolled at Frostburg State University. **Exhibit 1**.

Given the difference of Plaintiff's circumstances when he was enrolled at Frostburg State University as compared to now, Plaintiff must be allowed to present evidence regarding his loss of future earning power. In accordance with Md. Rule 2-402 and the Court's Scheduling Order for this case when the Court issues said order, the Plaintiff must be permitted to present expert testimony, including a vocational rehabilitation and marketability expert, among potentially others, to prove Plaintiff's loss of future pay and/or financial earning power at trial. Additionally, the fact that Plaintiff still receives long-term disability payments through the Social Security Administration has nothing to do with the Plaintiff's claim against the Defendants for lost earning power and financial capacity.

      **D**.     ***The Court must not dismiss Plaintiff's claims.***

In this case, at this time, there has been no formal discovery (answers to interrogatories, document production, and depositions). The pending motions before the Court and the documents demonstrate, in many ways, the genuine disputes in material facts of the record, and evidence issues with some of the Exhibits attached to the Defendants' employees' declarations (hearsay regarding Frostburg State University's website page about its online programs which was attached to Mr. Nixon's

declaration and the fact that the school's immunization policy was revised in October 2018 and never provided to the MHEC in response to Plaintiff's July 27, 2018 filed discrimination complaint; Ms. Smith's medical opinion provided in her own affidavit and the fact that she asserted she lifted the hold on Plaintiff's student hold through the Brady Health Center which allowed him to register for his Winter 2017 and Spring 2018 academic sessions classes; the authenticity of medical notes attached as Exhibits to Darlene Smith's declaration; and the flat out lies stated in Janelle Moffett's declaration). Additionally, Plaintiff has set forth two declarations that provide his accounts of what really happened in 2017-2018 related to his claims, and although they are Plaintiff's declarations, there are several supporting documents, including but not limited to emails between him and Defendants throughout the year 2018 that are related to his claims, his July 27, 2018 discrimination complaint, and the Defendants' September 7, 2018 response statement that support Plaintiff's version of the events giving rise to his claim. **Exhibit 1**, **Exhibit 2**.

Here, for the reasons stated above, Plaintiff sufficiently pleaded his intentional disability discrimination and failure to accommodate claims in the amended complaint and jury demand, and there are also genuine issues of material facts regarding the same.

## V.      CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests for this Honorable Court to deny the Defendants' motion to dismiss, or in the alternative, motion for summary judgment in its entirety, order that the Defendants file an Answer to Plaintiff's amended complaint and jury demand within fifteen days of the Court's order, and grant Plaintiff any such other relief the Court deems reasonable, necessary and just under the circumstances, which may include but is not limited to permitting Plaintiff to amend his complaint and jury demand.