**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| SHANE MALLON, | | |
| | * | |
| Plaintiff, *pro se* | | |
| | * | |
| v. | | Civil No.: BPG-19-795 |
| | * | |
| FROSTBURG STATE UNIVERSITY, *et al.*, | | |
| | * | |
| Defendants | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4.  (ECF No. 17). Currently pending are defendants' Motion for Sanctions or, in the Alternative, for Summary Judgment ("defendants' Motion") (ECF No. 87), plaintiff's Motion for Summary Judgment ("plaintiff's Motion") (ECF No. 95),  defendants' Reply in Support of defendants' Motion for Sanctions or, in the Alternative, for Summary Judgment and Opposition to plaintiff's Motion for Summary Judgment ("defendants' Reply") (ECF No. 96), and plaintiff's Reply in Support of Shane Mallon's Motion for Summary Judgment ("plaintiff's Reply") (ECF No. 98).  No hearing is deemed necessary.  Loc. R. 105.6.  For the reasons discussed herein, defendants' Motion for Sanctions or, in the Alternative, for Summary Judgment (ECF No. 87) is GRANTED and plaintiff's Motion for Summary Judgment (ECF No. 95) is DENIED.

## I.   __BACKGROUND__

The court incorporates the facts set forth in its previous opinion (ECF No. 32 at 4-10)[1] and adds additional facts pertinent to the pending motions.  In 2017, plaintiff enrolled as a student at defendant Frostburg State University ("FSU") for the fall semester. (ECF No. 95 at 1). During that semester, plaintiff's student account was put on hold because he had not complied with FSU's immunization policy.  (Id.)  FSU's immunization policy "requires all students to be immunized or show proof of immunity for measles, mumps, rubella, diphtheria, and tetanus, and have documentation of such immunity on file with the Brady Health Center (which is [FSU's] medical center)."  (ECF No. 18-1 at 3).  Plaintiff reported to FSU that he had been diagnosed with a medical condition, rheumatoid arthritis, that he takes immunosuppressive medications to treat this condition, and that he therefore cannot receive vaccinations. (ECF No. 95 at 1). Following conversations with the Brady Health Center, plaintiff's hold was lifted on his student account so he could register for spring 2018 semester classes.  (Id. at 2).  During the spring 2018 semester, plaintiff had a hold placed on his student account again due to his noncompliance with FSU's immunization policy.[2]

Defendants advised plaintiff that he could comply with the immunization policy by (1) obtaining his childhood vaccination records; (2) taking a measles, mumps, and rubella ("MMR") antibody titer blood test "to see if his childhood vaccines still provided him with immunity;" or

---

[1] The facts set forth in the court's previous opinion denying defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment (ECF No. 32) are still operative because no discovery was conducted by plaintiff and because plaintiff did not provide responses to defendants' interrogatories and requests for production of documents.

[2] Plaintiff also had a second hold on his student account due to a loan he had taken out to complete a winter semester class.  (ECF No. 95 at 3).  This hold was temporarily lifted in order to allow plaintiff to register for summer and fall 2018 classes and permanently resolved when plaintiff repaid the loan in August 2018.  (ECF No. 18-1 at 4).

(3) signing a religious exemption waiver "acknowledging that he would be identified as at risk for illness in the event of an outbreak on campus and be required to stay away from campus." (ECF No. 18-1 at 2-3).  Plaintiff advised that he was previously vaccinated as a child in Ireland, but that he had no way to obtain his vaccination records.  (ECF No. 18-1 at 3).  Plaintiff also declined to take an MMR antibody titer test.  (ECF No. 18-1 at 4).  Additionally, plaintiff declined to sign the religious exemption waiver because he believed it would compromise his principles.  (Id.)  FSU also offered plaintiff the option of signing a newly created waiver "for reasons of conscience," but plaintiff declined.  (Id.)  Plaintiff's doctor, John Miller, M.D., sent a letter to FSU stating that plaintiff was unable to receive live vaccinations.  (ECF No. 22-2 at 9). This letter, however, did not address whether plaintiff could receive non-live vaccinations such as the required tetanus and diphtheria vaccine ("Tdap").  The Brady Health Center informed Dr. Miller of this Tdap requirement but did not receive any further communications from him.  (ECF No. 23-3 at 22).  Therefore, FSU would not lift the hold on plaintiff's account to allow him to register for summer or fall 2018 classes.  (ECF No. 22-2 at 11).

On November 8, 2018, plaintiff was readmitted to FSU.  (ECF No. 95-16 at 22).  Plaintiff stated that FSU personnel enrolled him in two classes but that plaintiff wanted to drop them because "[i]t was at this time I knew [FSU] was determined to continue to retaliate against me until I left the school."  (ECF No. 95 at 7).  When plaintiff went to drop these two classes, he found that he needed to leave FSU or submit a leave of absence form.  He stated that he filled out a leave of absence form but "never heard if [FSU] accepted it."[3]

---

[3] Plaintiff includes a leave of absence form, which he signed on January 25, 2019, but it does not have signatures for the blocks labeled "Financial Aid's Signature" or "Advisor's Signature/Approval."  (ECF No. 95-16 at 32).  The form states "[p]lease complete, print and

On March 16, 2019, plaintiff filed his amended Complaint against defendants FSU and the State of Maryland d/b/a Frostburg State University (collectively, "defendants"), alleging that defendants discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA")[4] and the Rehabilitation Act of 1973 ("Rehabilitation Act").  (ECF No. 2 at 11–16).  Defendants filed a Motion to Dismiss (ECF No. 18) which this court denied on September 6, 2019 following a hearing.  (ECF No. 33).  In denying defendants' Motion to Dismiss, this court stated "I note that the parties have not had the benefit of discovery.  After the record is developed through discovery, it may be that there are no factual disputes remaining." (ECF No. 32 at 20 n.5).  Following defendants' Motion to Dismiss and the hearing, but before this court issued its denial of defendants' Motion to Dismiss, plaintiff's counsel filed a Motion to Withdraw (ECF No. 27) which this court subsequently granted.  (ECF No. 34).  Plaintiff was afforded additional time to retain new counsel, but chose to proceed *pro se*.  (ECF Nos. 37, 39, 40).  Thereafter, on November 14, 2019, an amended scheduling order was entered with a discovery deadline of April 6, 2020.  (ECF No. 49).

On December 13, 2019, defendants served their First Set of Interrogatories and First Request for Production of Documents on plaintiff.  (ECF No. 85-1 at 10-29).  On December 19, 2019, defendants served their First Set of Requests for Admission and Second Set of

---

obtain signatures.  Return to the Registrar's Office upon completion."  There is no date listed in the "Date form was returned" box.  (Id.)

[4] While plaintiff brings suit pursuant to the ADA generally (ECF No. 1 at 11-12), Title II is the governing statute for discrimination against an individual with a disability by exclusion from participation in or denial of benefits of the services, programs, or activities of a public entity.  42 U.S.C. 12132; Davis v. Univ. of N.C., 263 F.3d 95, 98 (4th Cir. 2001).  Here, plaintiff alleges that he was discriminated against by FSU, a public higher education institution within the state of Maryland, on the basis of his disability.  Accordingly, Title II is the applicable section of the ADA.

Interrogatories on plaintiff.  (Id. at 41-48, ECF No. 87-11).  On January 21, 2020, plaintiff answered defendants' First Set of Requests for Admission.  (ECF No. 87-12).  On January 22, 2020, plaintiff filed a Motion to Strike defendants' First Request for Production of Documents. (ECF No. 58).  The court rejected plaintiff's Motion to Strike and noted that plaintiff should follow the undersigned's informal discovery dispute procedure.  (ECF No. 59).  Plaintiff did not assert any objections to defendants' interrogatories at that time.  Following letters from the parties regarding the discovery dispute as to defendants' document requests, on February 7, 2020, the undersigned ordered plaintiff to "[p]rovide complete responses to [defendants'] First Request for Production of Documents" by no later than February 21, 2020.  (ECF No. 64 at 2). Plaintiff was advised that if he did not comply with this order, "he may be subject to sanctions pursuant to Federal Rule of Civil Procedure 37."  (Id.)

On April 24, 2020, the parties filed another discovery dispute for the undersigned's resolution because plaintiff had yet to respond to defendants' interrogatories and requests for production.  (ECF Nos. 68, 69, 70).  On April 28, 2020, the undersigned filed a second order, stating "[i]t is clear that [plaintiff] has not complied with the court's previous order," and ordering plaintiff to "provide written responses to [defendants'] First Set of Interrogatories . . . and [defendants'] Second Set of Interrogatories . . . and produce the requested documents in [defendants'] First Request for Production of Documents."  (ECF No. 71 at 1). The undersigned also advised plaintiff "that if he does not comply with this Order, he may be subject to sanctions pursuant to Federal Rule of Civil Procedure 37, including dismissal of this lawsuit."  (Id. at 2).  Defendants filed a status report on June 8, 2020, and a joint status report with plaintiff on June 18, 2020, stating that discovery had not been completed.  (ECF No. 72,

74).  Accordingly, an amended scheduling order was entered extending the discovery deadline to September 30, 2020.  (ECF No. 75).

On June 30, 2020, the parties filed letters pertaining to another discovery dispute regarding plaintiff's lack of response to defendants' discovery requests.  (ECF No. 76, 77, 78). On July 2, 2020, this court issued a third order granting an extension of time to complete discovery due to the ongoing COVID-19 pandemic and again directing plaintiff to provide responses to defendants' discovery requests by no later than July 10, 2020.  (ECF No. 79).  The undersigned, once again, warned plaintiff that failure to comply with the court's order could result in dismissal of the case, and noted that no further extensions would be granted.  (Id. at 2).

On July 24, 2020, defendants informed the undersigned of another discovery dispute. (ECF Nos. 80, 81).  This court ordered plaintiff to provide his position letter when he did not comply with this court's informal discovery dispute procedure.  (ECF No. 82).  Plaintiff filed his position letter regarding the dispute on July 29, 2020.  (ECF No. 83).  On August 7, 2020, the court issued a fourth order providing plaintiff with "one last opportunity" to respond to defendants' discovery requests and sign releases for medical records.  (ECF No. 84).  On August 25, 2020, defendants reported that plaintiff had "provided no interrogatory answers, no responses to the Requests for Production, and no responsive documents," and additionally "refused to sign the [medical] releases."  (ECF No. 85 at 2).  Since defendants first propounded discovery on plaintiff in December 2019, more than eight months passed during which plaintiff did not provide responses to defendants' interrogatories or document production requests.    On September 2, 2020, the undersigned approved defendants' proposed briefing schedule for their now pending Motion for Sanctions or, in the Alternative, Summary Judgment.  (ECF No. 86).

## II.   **DEFENDANTS' MOTION FOR SANCTIONS**

Defendants' primary argument is that plaintiff's case should be dismissed as a sanction for not complying with the court's multiple orders to produce discovery.  (ECF No. 87-1 at 7-15).

### A.   **Standard of Review**

Federal Rule of Civil Procedure 37 provides that the court may impose sanctions upon a party that does not obey a discovery order, up to and including dismissal of the case, and empowers the court to sanction a party for failure to comply with a court order regarding discovery.  Fed. R. Civ. P. 37(b)(2)(A), 37(b)(2)(A)(v).  Prior to imposing sanctions, the court should consider: "(1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that noncompliance caused the adversary; (3) the need for deterrence of the particular sort of non-compliance; and (4) whether less drastic sanctions would have been effective." O'Briant v. Nestle Dreyer's Ice Cream, No. ELH-18-1048, 2020 WL 3791958, at *7 (D. Md. July 6, 2020) (quoting Belk v. Charlotte Mecklenburg Bd. of Educ., 269 F.3d 305, 348 (4th Cir. 2001)).

Pursuant to Federal Rule of Civil Procedure 41(b), "a defendant may move to dismiss" a case "[i]f the plaintiff fails to prosecute or to comply with . . . a court order."  Fed. R. Civ. P. 41(b).  The court must consider: "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal."  Id. (quoting Attkisson v. Holder, 925 F.3d 606, 625 (4th Cir. 2019)).  A plaintiff's *pro se* status does not excuse him from compliance with the Federal Rules of Civil Procedure.

7

Id. at *8 (citing Dancy v. Univ. of N.C. at Charlotte, No. DCK-08-166, 2009 WL 2424039, at *2 (W.D.N.C. Aug. 3, 2009), Arnett v. Prince George's Cnty., No. AW-02-3861, 2004 WL 3313218, at *2 (D. Md. July 29, 2004)).  Sanctions regarding discovery will be reviewed "for abuse of discretion."  Brown v. Elliott, 876 F.3d 637, 645 (4th Cir. 2017) (quoting Hoyle v. Freightliner, LLC, 650 F.3d 321, 329 (4th Cir. 2011)).

### B. Discussion

In their Motion, defendants argue that this case should be dismissed as a sanction for plaintiff's failure to obey the court's orders regarding production of discovery pursuant to both Rule 37(b)(2) and Rule 41(b).  (ECF No. 87-1 at 7-15).  Defendants maintain that the dismissal of this case is the only appropriate sanction because plaintiff has failed to produce any discovery over the course of this case, despite four orders from this court to do so.  Defendants argue that dismissal is appropriate pursuant to Rule 37(b)(2) and/or Rule 41(b).  Plaintiff does not contest defendants' Motion for Sanctions[5], other than to state that "I know I've missed deadlines but I am trying hard to do the right thing" and "I will try harder to comply with all future deadlines." (ECF No. 98 at 3).[6]  The factors to consider pursuant to Rule 37(b)(2) and Rule 41(b) are discussed in turn below.

The first factor to consider pursuant to Rule 37(b)(2) is whether plaintiff has acted in bad faith.  "Failure to obey court orders, especially repetitively, amounts to bad faith."  Paradyme

---

[5] Plaintiff's Motion primarily discusses his Motion for Summary Judgment, which is discussed further below.
[6] The court notes that, despite plaintiff's statement that he would "try harder to comply with all future deadlines," he also stated that he would try to respond to defendants' Motion for Summary Judgment, although "[i]t may take me two weeks to complete."  (ECF No. 98 at 4).  That statement was filed with the court on April 5, 2021, and as of the date of this opinion, over four months later, plaintiff has yet to file such a response.

Mgmt., Inc. v. Curto, No. PWG-17-3687, 2018 WL 9989656, at *8 (D. Md. June 11, 2018). Here, plaintiff has blatantly disregarded and ignored four orders from this court, filed over the course of five months, to produce discovery.  As defendants note, "[t]he District of Maryland has dismissed actions for bad faith for similar violations."  (ECF No. 87-1 at 9) (citing White v. Shoppers Food Warehouse Corp., No. JKS-11-1955, 2013 WL 599105, at *2 (D. Md. Feb. 14, 2013) ("Here, four separate failures to respond to a court order support a finding of bad faith."), Labeau v. Motor Vehicle Admin., No. BEL-06-1153, 2008 WL 11509486, at *1 (D. Md. Nov. 26, 2008) (dismissing *pro se* plaintiff's ADA case pursuant to Rule 37(b)(2) after violating four court orders to execute medical release)).  Plaintiff's "disregard for the Federal Rules of Civil Procedure and Local Rules of this [c]ourt, as well as this [c]ourt's orders, demonstrates a 'pattern of indifference and disrespect to the authority of the court.'"  Pisani v. Baltimore City Police Dept., No. WDQ-12-1654, 2014 WL 1401934, at *3 (D. Md. Apr. 8, 2014).  Accordingly, this factor weighs in defendants' favor because plaintiff has acted in bad faith by repeatedly failing to comply with this court's orders.

The second factor to consider, for both Rule 37(b)(2) and Rule 41(b), is "the amount of prejudice that noncompliance caused the adversary."  O'Briant, 2020 WL 3791958, at *7.  "The purpose of pre-trial discovery is for a litigating attorney to obtain information from the opposing party, information which in many cases is not otherwise available."  Adams v. Md. Mgmt. Co., No. WDQ-11-2408, 2013 WL 142074, at *2 (D. Md. Jan. 10, 2013).  Here, plaintiff's refusal to produce any discovery severely prejudiced defendants, as defendants were unable to prepare their defense to plaintiff's claims.  For example, defendants were unable to validate or determine the extent of plaintiff's alleged disability of rheumatoid arthritis or to gather any information to

determine the accuracy of plaintiff's claims that his medical condition prevented him from being vaccinated. Plaintiff also did not identify any witnesses, health care providers, or other persons with knowledge of the facts of this case, so defendants were unable to depose anyone or properly prepare their defense. "[I]t cannot be disputed that [p]laintiff's failure to answer even a single interrogatory precludes [d]efendant[s] from preparing a defense." Robertson v. Deco Sec., Inc., No. WDQ-09-3093, 2010 WL 3781951, at *5 (D. Md. Sept. 22, 2010). Additionally, plaintiff refused to sign medical releases so that defendants could subpoena plaintiff's relevant medical records from plaintiff's health care providers. (ECF No. 87-1 at 11). Other courts have dismissed cases in which plaintiffs refused to sign medical releases for relevant discovery. See Gomez v. Dillon Co., Inc., No. REB-09-676, 2010 WL 1644610, at *2 (D. Colo. Apr. 22, 2010) (dismissing plaintiff's case as a sanction because plaintiff "refused to provide waivers and releases concerning her medical records"), Jennings v. Sallie Mae, Inc., No. WTL-07-1008, 2009 WL 10709913, at *1 (S.D. Ind. May 6, 2009) (dismissing plaintiff's case because plaintiff "repeatedly refused to execute an Authorization for Release of Medical Records"). Plaintiff's repeated refusal to provide discovery or sign a medical release has severely prejudiced defendants in this case.

Third, the court considers the need to deter noncompliance similar to plaintiff's noncompliance in this case. "[I]n light of the [c]ourt's warning to [plaintiff] that [his] failure to comply with its order might result in dismissal, a less severe sanction could 'place[] the credibility of the court in doubt and invite[] abuse.'" Woodbury v. Victory Van Lines, No. TDC-16-2532, 2019 WL 2135649, at *6 (D. Md. May 16, 2019) (quoting Ballard v. Carlson, 882 F.2d 93, 95-96 (4th Cir. 1989)). Plaintiff has failed to adhere to the court's repeated orders to produce

discovery, including orders in which the court clearly advised plaintiff that he faced dismissal of this case if he did not comply. (ECF Nos. 79, 84). Obviously, similar behavior from other litigants must be deterred. Additionally, this court's final order stated that it was giving plaintiff "one last opportunity" to respond to defendants' discovery request and sign releases for medical records. (ECF No. 84). "When the [c]ourt has issued an explicit warning that continued failure to comply could result in dismissal, this is a critical fact which supports the [c]ourt's discretion to dismiss." Legacy Inv. & Mgmt., LLC v. Susquehanna Bank, No. WDQ-12-2877, 2013 WL 5423919, at *7 (D. Md. Sept. 26, 2013). To allow plaintiff's case to continue without sanctions, or with lesser sanctions, would serve to render meaningless this court's orders.

The fourth consideration, for both Rule 37(b)(2) and Rule 41(b), is whether less drastic sanctions would be effective. In this case, because of plaintiff's complete disregard of the court's orders in addition to plaintiff's steadfast resistance to answering defendants' discovery requests and to providing a medical release, no sanctions short of dismissal would be effective. The court has already afforded plaintiff four opportunities and over eight months to respond to discovery and to comply with the court's orders. Plaintiff, therefore, "has brought the case to a halt through a failure to participate in discovery." Ferguson v. Prince George's Cnty., Md., No. TDC-14-3613, 2018 WL 1169083, at *4 (D. Md. Mar. 6, 2018). Additionally, because plaintiff has not produced any discovery, allowing the case to proceed would be "pointless" as plaintiff "would be prevented from introducing . . . evidence at trial." Williams v. Montgomery Cnty., Md., No. PX-16-3204, 2018 WL 2087396, at *4 (D. Md. May 4, 2018). "To allow otherwise would condone trial by ambush." Id. Therefore, considering the four factors related to Rule

11

37(b)(2), dismissing this action as a sanction for plaintiff's refusal to participate in discovery is appropriate.

Regarding Rule 41(b), two factors remain for the court to consider: "the plaintiff's degree of personal responsibility" and "the presence of a drawn out history of deliberately proceeding in a dilatory fashion." O'Briant, 2020 WL 3791958, at *7 (quoting Attkisson v. Holder, 925 F.3d 606, 625 (4th Cir. 2019)). With regard to plaintiff's personal responsibility, while plaintiff is *pro se*, "self-represented litigants 'as well as other litigants are subject to the time requirements and respect for court orders without which effective judicial administration would be impossible.'" Id. at *8 (quoting Ballard, 992 F.2d at 96). Therefore, plaintiff's *pro se* status does not absolve him of personal responsibility. Additionally, plaintiff was ordered multiple times to comply with this court's orders and was warned that his failure to comply could result in dismissal of this case. It was solely plaintiff's personal responsibility to comply with the court's orders and respond to defendants' discovery requests, and he alone failed to do so.

With regard to plaintiff's "history of deliberately proceeding in a dilatory fashion," over the course of many months, and many orders, plaintiff failed to produce a single document or answer a single interrogatory. Accordingly, this factor also weighs in defendants' favor. In sum, defendants' request to dismiss this case as a sanction for plaintiff's repeated failure to comply with this court's orders and produce discovery is appropriate pursuant to Rule 37(b)(2) and Rule 41(b). Therefore, defendants' Motion for Sanctions (ECF No. 87) is granted.

## III.   CROSS-MOTIONS FOR SUMMARY JUDGMENT

In the alternative, defendants maintain that summary judgment is appropriate "because there is no evidence in the record supporting [plaintiff's] claims." (ECF No. 87-1 at 16-33).

Plaintiff, instead of providing a response to defendants' Motion for Summary Judgment, filed a cross-Motion for Summary Judgment.  (ECF No. 95).  As discussed below, defendants' Motion for Summary Judgment (ECF No. 87) will be granted and plaintiff's Motion for Summary Judgment (ECF No. 95) will be denied.

### A.  Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law.  Id.  The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.  Anderson, 477 U.S. at 252.

13

In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue.  Celotex, 477 U.S. at 324.  A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment.  Anderson, 477 U.S. at 252.  Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact.  Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party.  Anderson, 477 U.S. at 252.

## B. Discussion

In his amended Complaint, plaintiff asserts the following claims against defendants pursuant to the ADA and the Rehabilitation Act: 1) Counts I and III: disability discrimination due to actual and/or perceived disability and/or record of impairment; and 2) Counts II and IV: disability discrimination due to failure to accommodate.  (ECF No. 2).  Defendants, in their Motion for Summary Judgment, argue that summary judgment is appropriate for defendants on all counts primarily due to plaintiff's lack of evidence.  (ECF No. 87-1 at 16-33).  Plaintiff responded with a cross-Motion for Summary Judgment in which he provides his own narrative of the events that transpired and led him to filing these claims.  (ECF No. 95).  Additionally, plaintiff argues that "[t]his case is a clear violation of ADA law.  There was clear documentation of my disability on file but they choice [sic] to discriminate and retaliate against me because they

believed they were right.  Everyone involved had a duty of care to know the rules for which they were enforcing but clearly didn't.  They acted arbitrarily and capriciously."  (Id. at 7-8).

Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."  42 U.S.C. § 12132.   Similarly, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a). The McDonnell Douglas framework used for Title VII claims is utilized to analyze plaintiff's ADA and Rehabilitation Act claims.  Figueroa v. Geithner, 711 F. Supp. 2d 562, 572 (D. Md. 2010) ("Rehabilitation Act claims are analyzed under the framework[] originally formulated for Title VII claims, announced in McDonnell Douglas v. Green."), A Helping Hand, LLC v. Baltimore Cnty., MD, 515 F.3d 356, 362 (D. Md. 2008) ("[B]ecause the ADA 'echoes and expressly refers to Title VII, and because the two statutes have the same purpose,' courts confronted with ADA claims have also frequently turned to precedent under Title VII.").  Under this framework, plaintiff must first demonstrate a prima facie case: (1) that he has a disability; (2) that he is otherwise qualified to receive the benefit of a service, program, or activity of a public entity; and (3) that he was excluded from such a benefit, or was otherwise discriminated against, on the basis of his disability.  Davis v. Univ. of North Carolina, 263 F.3d 95, 99 (4th Cir. 2001), Baird v. Rose, 192 F.3d 462, 467-70 (4th Cir. 1999), Jardina v. Dept. of Public Safety and

Correctional Services, No. JKB-16-1255, 2019 WL 1745995, at *3 (D. Md. Apr. 17, 2019).[7]
Next, if plaintiff successfully establishes this prima facie case, a burden-shifting approach is applied.  Defendants must offer a non-discriminatory explanation for their actions, and then plaintiff must rebut defendants' explanation as pretextual for discrimination.  Vannoy v. Fed. Reserve Bank of Richmond, 827 F.2d 296, 304 (4th Cir. 2016).  The court will first evaluate the elements of plaintiff's prima facie case followed by the burden-shifting approach.

### 1.  Prima Facie Case

Regarding the first element of his prima facie case, plaintiff can demonstrate he has a disability if he: "(1) has a physical or mental impairment that substantially limits one or more of [plaintiff's] major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment."  Davis, 263 F.3d at 99 (citing 42 U.S.C. § 12102(2), 29 U.S.C. § 705(20)(B)).  Defendants argue that plaintiff "has not produced any admissible evidence establishing any of these conditions."  (ECF No. 87-1 at 17).  Plaintiff provided no evidence of his disability during the discovery process.  In plaintiff's Motion, he attaches a page from what appears to be a Social Security disability opinion regarding his disability, and states that it was on file with defendant FSU.  (ECF No. 95 at 1, ECF No. 95-4).  "[U]nsworn reports are inadmissible on summary judgment unless accompanied by affidavits or depositions swearing to their contents and conclusions."  Edens v. Kennedy, 112 F. App'x 870, 879 (4th Cir. 2004).  This unauthenticated, unsworn, single page out of what appears to be a multi-page document does not

---

[7] A plaintiff seeking recovery under the Rehabilitation Act must also "demonstrate that the [public entity] at issue receives federal funding."  Paulone v. City of Frederick, 787 F. Supp. 2d 360, 371 (D. Md. 2011).  The undersigned need not address whether defendants received federal funding, as there is no genuine issue of material fact regarding the remaining elements of plaintiff's Rehabilitation Act claim.

adequately support that plaintiff has a disability.  Additionally, "[p]laintiff's own personal medical opinions are incompetent, speculative evidence and are simply not admissible on summary judgment."  Ballard v. NC Dept. of Public Safety, No. FDW-13-175, 2015 WL 5062214, at *10 (W.D.N.C. Aug. 27, 2015).

Similarly, even if plaintiff argued that defendants were aware of plaintiff's rheumatoid arthritis diagnosis or plaintiff's adverse reactions to vaccinations, mere awareness does not generate a factual issue as to whether defendants regarded plaintiff as disabled.  See Haulbrook v. Michelin North America, 252 F.3d 696, 703 (4th Cir. 2001) ("The fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate . . . that the employer regarded the employee as disabled . . . ."), Herzog v. Loyola College in Maryland, Inc., No. RDB-07-2416, 2009 WL 3271246, at *8 (D. Md. Oct. 9, 2009) ("The mere fact that [defendants] were aware of [plaintiff's] ADHD is insufficient to demonstrate . . . that they regarded him as disabled . . . .").  Accordingly, plaintiff has failed to generate a factual dispute as to whether he has a disability.  While plaintiff may have a disability, plaintiff has not adduced admissible evidence to support that he has a disability.

As for the second element, plaintiff must show that he is otherwise qualified to receive the benefit of a service, program, or activity of a public entity.  Davis, 263 F.3d at 99.  "To determine whether a plaintiff has satisfied this burden, a court must decide whether he has presented sufficient evidence to show (1) that he could satisfy the essential eligibility requirements of the program, i.e., those requirements that bear more than a marginal relationship to the [program] at issue, and (2) if not, whether any reasonable accommodation by the

17

[defendants] would enable the plaintiff to meet these requirements." Halpern v. Wake Forest Univ. Health Sciences, 669 F.3d 454, 462 (4th Cir. 2012).

In this case, defendants argue that their immunization policy is an essential eligibility requirement because of the public health necessity to prevent the spread of serious communicable diseases such as measles, mumps, and rubella, and to ensure protection against severe infections such as tetanus and diphtheria. (ECF No. 87-1 at 24-25). Approximately "1 in 5 unvaccinated people in the U.S. who get measles [are] hospitalized." (ECF No. 87-13 at 5). For tetanus, "1 to 2 in 10 cases are fatal." (Id. at 22). Regarding unvaccinated individuals who get diphtheria, "[w]ithout treatment, up to half of patients can die," and "with treatment, about 1 in 10 patients . . . die." (Id. at 24). Based on the Centers for Disease Control ("CDC") recommendation that everyone receive an MMR vaccination once and receive a tetanus and diphtheria ("Tdap") vaccine once every ten years, defendants used their professional judgment to mandate vaccinations and/or immunization records for these diseases and infections. (ECF No. 18-3 ¶ 5-6). "In determining whether an educational institution's eligibility requirement is essential . . . we accord a measure of deference to the school's professional judgment." Class v. Towson Univ., 806 F.3d 236, 246 (4th Cir. 2015). Additionally, this court has found that mandatory immunization and vaccination requirements, as well as steps to prevent the spread of communicable diseases, "constitute[] a compelling interest." Workman v. Mingo Cnty. Bd. of Educ., 419 F. App'x 348, 353 (4th Cir. 2011); see also Antietam Battlefield KOA v. Hogan, 461 F. Supp. 3d 214, 237 (D. Md. 2020) (finding that "[s]lowing the spread of COVID-19 is a compelling government interest"). Therefore, this court finds that defendants' immunization policy is an essential eligibility requirement of defendants' program.

Because the immunization policy is an essential eligibility requirement, plaintiff must show either that he could satisfy this requirement or, if not, whether any reasonable accommodation by defendants would enable him to meet this requirement.  <u>Halpern</u>, 669 F.3d at 462.  Defendants maintain that plaintiff has failed to meet his burden to generate a factual dispute as to whether he could satisfy this requirement because he did not provide documentation that he was unable to obtain a Tdap vaccination, he did not provide admissible evidence regarding his MMR or Tdap vaccination records, and he refused to take an MMR antibody titer test.  (ECF No. 87-1 at 22-27).  Specifically with regard to plaintiff's Tdap vaccination, plaintiff admitted he had a Tdap vaccination in 2011 but refused to provide any discovery to prove this or to sign a medical release so that defendants could subpoena these records.  (ECF No. 87-1 at 22).  "[F]ailure to provide such documentation constitutes a failure to participate in this investigatory process that bars [defendants'] liability for failure to accommodate."  <u>Rice v. HAR-CO Credit Union</u>, No. RDB-13-3368, 2014 WL 4686669, at *4 (D. Md. Sept. 17, 2014) (stating that this court has previously interpreted ADA regulations to permit employers to request documentation about an employee's disability from an employee in order to "determine the appropriate reasonable accommodation").  Accordingly, plaintiff has not offered evidence sufficient to create a factual dispute that he could satisfy the essential eligibility requirements of the program.

The question then becomes whether plaintiff has offered sufficient evidence to show that a "reasonable accommodation by the [defendants] would enable the plaintiff to meet these requirements."  <u>Halpern</u>, 669 F.3d at 462.  Plaintiff has failed to do so.  Here, defendants offered multiple reasonable accommodations – they indicated that plaintiff could obtain MMR antibody titer test instead of providing proof of vaccination for measles, mumps, and rubella.  (ECF No.

18-1 at 2-3).  Defendants also offered plaintiff the option to sign a religious exemption waiver or a conscientious exemption waiver for all the required vaccinations.  (ECF No. 18-1 at 4).

Plaintiff refused to accept any of these reasonable accommodations, because they were "invasive" and compromised his principles.  (Id.)  Plaintiff argues that defendants should have allowed him to take online classes as a reasonable accommodation.  Defendants are not required, however, to provide "the best" accommodation, or plaintiff's preferred accommodation.  Walter v. United Airlines, Inc., No. 99-2622, 2000 WL 1587489, at *5 (4th Cir. Oct. 25, 2000) (citing Rehling v. City of Chicago, 207 F.3d 1009, 1014 (7th Cir. 2000)).  In this court's previous opinion regarding defendants' Motion to Dismiss, the undersigned noted that factual disputes existed regarding whether plaintiff could receive non-live vaccines, such as the Tdap vaccine, and whether documentation of plaintiff's previous Tdap vaccination existed.  (ECF No. 32 at 18).  Since the court's opinion was issued, plaintiff failed to produce any admissible evidence regarding these critical questions.  The only evidence of record is that defendants provided plaintiff with several reasonable accommodations that would enable him to meet the immunization requirement.  Plaintiff declined to accept those reasonable accommodations. Plaintiff has failed to generate any material factual disputes to indicate that defendants' reasonable accommodations would not have enabled plaintiff to meet the essential eligibility requirements.  Consequently, plaintiff has failed to meet his burden to establish the second element of a prima facie case.

Even if plaintiff had met the first two requirements of a prima facie case, he has failed to establish the third  element, that he was excluded from the benefit of a service, program, or activity of a public entity, or was otherwise discriminated against, on the basis of his disability.

20

Davis, 263 F.3d at 99.  "The Fourth Circuit has recognized 'three distinct grounds for relief [for ADA and Rehabilitation Act claims]: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations.'"  Innes v. Bd. of Regents of the Univ. Sys. of Md., 29 F. Supp. 3d 566, 577-78 (D. Md. 2014) (quoting A Helping Hand, LLC, 515 F.3d at 362).  Plaintiff asserts both intentional discrimination and failure to make reasonable accommodations as grounds for relief in his amended Complaint.  (ECF No. 2 at 11-15).

Defendants argue that plaintiff cannot establish that he was excluded from FSU on the basis of his disability because FSU's "objectives and policies were implemented based on CDC recommendations for disease control."  (ECF No. 18-1 at 10 n.4).  The only evidence of intentional discrimination that plaintiff provides is his own self-serving Motion for Summary Judgment in which he recites the facts from his perspective.  (ECF No. 95).  "[A] party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment."  CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 (4th Cir. 2020) (quoting Williams v. Giant Food Inc., 370 F.3d 423, 433 (4th Cir. 2004)) (citing authority).  While plaintiff does attach some unauthenticated and generally unspecific exhibits (see ECF Nos. 95-1 through 16), these were not produced to defendants during discovery and, therefore, cannot be used as evidence by plaintiff in this procedural posture.  "[U]nsworn, unauthenticated documents cannot be considered on a motion for summary judgment.  To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure] 56(e) – that the documents be admissible in evidence."  Lorraine v. Markel American Ins. Co., 241 F.R.D. 534, 536 (D. Md. 2007) (quoting

21

Miskin v. Baxter Healthcare Corp., 107 F. Supp. 2d 669, 671 (D. Md. 1999)).   Because plaintiff's exhibits are unsworn and unauthenticated, they are not admissible.[8]   Accordingly, plaintiff has failed to generate a factual dispute that defendants excluded him from FSU on the basis of his disability.

Defendants also argue that they did not exclude plaintiff on the basis of his disability due to a failure to make reasonable accommodations.   Plaintiff must "demonstrate that [d]efendant[s'] offered accommodation was unreasonable."   Nelson-Rogers v. Kaiser Permanente, No. GJH-17-3326, 2020 WL 917067, at *7 (D. Md. Feb. 25, 2020).   As discussed above, plaintiff has failed to demonstrate that defendants' multiple accommodations were unreasonable in this case.   Accordingly, plaintiff has failed to generate factual disputes as to any of the elements of his prima facie case.   Therefore, summary judgment for defendants is appropriate on all counts.

### 2. Burden-Shifting Approach

Even if the court were to find that plaintiff established a prima facie case for his claims, the McDonnell Douglas framework additionally requires the application of the burden-shifting approach.   Defendants must state a legitimate, non-discriminatory reason for their action and plaintiff must show that defendants' reason is pretextual for discrimination.   In order "to prove by a preponderance of the evidence that the proffered reasons [for defendants' exclusion of plaintiff] were pretextual," Wright v. Southwest Airlines, 319 F. App'x 232, 233 (4th Cir. 2009),

---

[8] Plaintiff's exhibits consist of website pages from sources such as the Centers for Disease Control (see, e.g., ECF Nos. 95-2, 95-3, 95-9, 95-28, 95-30), emails between plaintiff and various FSU staff members (see, e.g., ECF Nos. 95-16, 95-21, 95-25, 95-36), and other unidentified documents (see, e.g., ECF Nos. 95-4, 95-15, 95-23), among others.   The court has reviewed plaintiff's exhibits and concludes that even if the exhibits were presented in admissible form, they do not generate genuine issues of material fact.

plaintiff must show "both that [defendant's] reason was false, and that discrimination was the real reason for the challenged conduct," or, in other words, that plaintiff would not have been excluded from FSU "but for [defendant's] retaliatory animus." Fry v. Rand Construction Corp., 964 F.3d 239, 246 (4th Cir. 2020) (quoting Foster v. University of Maryland-Eastern Shore, 787 F.3d 243, 252 (4th Cir. 2015)). The "court must . . . evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." White v. W.R. Winslow Mem'l Home, Inc., No. 99-1781, 2000 WL 346947, at *2 (4th Cir. Mar. 15, 2000).

As discussed herein, defendants provide a legitimate, non-discriminatory reason for why plaintiff was not able to register for classes and ultimately left defendant FSU - because he did not comply with the immunization policy. It is then plaintiff's burden to generate a factual dispute as to whether defendants' reason is false and that defendants' real reason for preventing him from registering for classes was discriminatory. Once more, plaintiff does not provide evidence besides his "self-serving opinion," which "cannot, absent objective corroboration, defeat summary judgment." CTB, Inc., 954 F.3d at 658 (quoting Williams, 370 F.3d at 433). Plaintiff has failed to provide any evidence to prove either that defendants' legitimate, non-discriminatory reason was false or that discrimination was defendants' true motivation. Accordingly, plaintiff has failed to meet his burden and generate a factual dispute as to whether defendants' legitimate non-discriminatory reason was false and whether discrimination was the real reason for defendants' actions. Therefore, summary judgment for defendants on Counts I, II, III, and IV is appropriate.

23

IV.     **CONCLUSION**

For the foregoing reasons, defendants' Motion for Sanctions or, in the Alternative, for Summary Judgment (ECF No. 87) is GRANTED and plaintiff's Motion for Summary Judgment (ECF No. 95) is DENIED.  A separate order will be issued.


September 15, 2021                          _____/s/_____

                                            Beth P. Gesner
                                            Chief United States Magistrate Judge

24